**FORMULABS, INC., Appellant,**

v.

**HARTLEY PEN COMPANY and E. I. du Pont de Nemours & Company, Appellees.**

**No. 16140.**

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1960.

Rehearing Denied April 8, 1960.

William Douglas Sellers, Pasadena, Cal., for appellant.

Owen A. Bartlett, A. V. Falcone, Los Angeles, Cal., for Hartley Pen Co.

Lawler, Felix & Hall, John M. Hall, Brenton L. Metzler, Los Angeles, Cal., for E. I. du Pont de Nemours & Co.

Before BARNES and JERTBERG, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge.

Hartley Pen Company, a California corporation, the plaintiff in the district court and one of the appellees on this appeal, filed a complaint against E. I. du Pont de Nemours & Company, a Delaware corporation, the other appellee on this appeal, in the Superior Court of the State of California, in and for the County of Los Angeles, alleging breach of warranty. Such parties will hereafter be referred to respectively as Hartley and du Pont. The action was transfer-red to the United States District Court for the Southern District of California, Central Division, on petition of du Pont.

Jurisdiction was vested in the district court under the provisions of Title 28 U.S.C.A. § 1332, by reason of diversity of citizenship, the amount in controversy exceeding the sum of $10,000 exclusive of interest and costs.

It appears from the record that Hartley manufactures ball point pens incorporating cartridges filled with ink made under a secret formula comprising a trade secret belonging to Formulabs, Inc., the appellant on this appeal, which appellant will hereafter be referred to as Formulabs. The use of the secret formula by Hartley was under the terms of a written license agreement between Hartley and Formulabs.[1]

The ink manufactured by Hartley and placed in the cartridges incorporated a dye purchased by Hartley from du Pont. In August 1953 du Pont sold to Hartley lots 36 and 37 of blue B dyes. The complaint alleges that the inks made by Hartley using dye lots 36 and 37 proved to be defective and unmerchantable. Hartley claimed that it suffered general and special damages in large amounts as the proximate result of the alleged defective and unmarketable dye.

Du Pont filed its answer to the complaint, in which it denied most of the material allegations of the complaint. In its second defense du Pont alleged that it had been advised in October of 1952 by Formulabs that Formulabs had licensed Hartley to manufacture ink according to a formula developed by Formulabs using du Pont's dye, and that in the future Hartley would purchase from du Pont the dye to be used in said ink.

As part of its discovery proceedings du Pont sought to learn the Formulabs' secret formula used by Hartley in the

---

1. The license agreement states that Formulabs is the owner of a secret formula for making ball pen ink which Hartley, engaged in the manufacture of ball pen inks, desired to use in the manufacture of ink. Under the license agreement Hartley agreed, among other things, that it would not "in any way or manner make known, divulge or communicate the secret of said formula to any person or persons whomsoever, and will take all reasonable precaution against the secret of said formula being learned or acquired by any unauthorized person or persons."

formulation of the alleged defective ink using the alleged defective dye, lots 36 and 37, as well as certain of Formulabs' secret test procedures which had been disclosed to Hartley. On du Pont's motion for production and inspection of documents, made under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., and over the objections of Hartley, the district court granted du Pont the right to inspect documents in Hartley's custody or under its control. It is conceded that such inspection would presumably disclose the secret formula and test procedures. Among the interrogatories propounded by du Pont to Hartley were interrogatories 34 and 37. Interrogatory 34 is in the following form:

"State in detail the formula and procedure used and/or followed by plaintiff in manufacturing each and every batch of ink which plaintiff contends was defective because Lot 36 or Lot 37 of Luxol Fast Blue MBS dye was used therein."

Interrogatory 37 is as follows:

"Describe in detail the 'secret tests' made by plaintiff and referred to in plaintiff's answer to defendant's interrogatory No. 14, and state what the results of said 'secret tests' were."

Hartley objected to such interrogatories. The objections were overruled, but no formal order has as yet been entered by the district court. It is conceded that such interrogatories if answered by Hartley would presumably disclose the secret formula and test procedures belonging to Formulabs.

The district court was fully aware of the existence of the license agreement between Hartley and Formulabs. The record is likewise clear that under statements made by the district judge Hartley must disclose the secret formula and secret test procedures or be faced with a dismissal of its suit for damages against du Pont. Among other statements made by the district judge to counsel for Hartley in connection with various discovery hearings are the following: "You can talk all you want to, but if you go to trial in this case you are going to have to submit your formula. Now, I don't care what it does or anything else to your contractual rights." "I told you before and I meant it, that you are either going to divulge your formula or out the case goes."

On February 5, 1958, Formulabs moved the district court to intervene in the pending action between Hartley and du Pont on the ground that the property affected belonged to it and that its right of ownership would be seriously injured and destroyed by disclosure of the trade secret. Attached to the motion was the proposed intervenor's cross complaint. Attached to the cross complaint was a copy of the license agreement between Formulabs and Hartley. In the cross complaint it is alleged that the secret formula and the secret test procedures are of great value and disclosure of them would do great and irreparable damage to Formulabs' business. The cross complaint prayed that Hartley be enjoined from disclosing such trade secrets. After hearing, the district court entered a final judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, denying Formulabs' petition for intervention.

The district court ordered there be no disclosure of any secret formula or test procedures by Hartley to du Pont pending determination of this appeal.

The sole issue on this appeal is whether the district court erred in denying Formulabs' motion to intervene. The resolution of that issue in turn depends upon the construction to be given to the provisions of the pertinent provisions of Rule 24, Federal Rules of Civil Procedure.[2] Section (a) of this rule

2. Rule 24 of the Federal Rules of Civil Procedure provides:
    "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may

deals with intervention of right. Section (b) of the rule deals with permissive intervention. Since appellant concedes that intervention was not sought under this section, we will not extend this opinion by quoting the provisions thereof. Section (c) of the rule deals with procedure. Since no problem of procedure is involved, we will not quote the provisions of section (c).

The issue before us is further narrowed by Formulabs' concession that unless the intervention sought was a matter of right under Rule 24(a) necessary grounds of jurisdiction to order intervention were lacking, and the order denying intervention was not an appealable order. We will, therefore, return to a discussion of Rule 24(a). Rule 24(a) states that upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene. Formulabs makes no contention under this subsection. Section (a) (2) provides for the right of intervention "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action." Formulabs makes no contention under this section. Formulabs rests its entire right to intervene under section (a) (3) of the rule, which reads: "(3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof."

Rule 24(a) (3) was amended December 27, 1946, effective March 19, 1948, [italics indicate added matter]: "(3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property *which is in the custody or subject to the control or disposition of* the court or an officer thereof."

We have been unable to find any controlling decision which has interpreted or construed this amended sub-section.

Moore's Federal Practice, Volume 4, page 58 states: "The 1946 amendment to Rule 24(a) (3) clarified the question of court control. Under the amendment, property need not be actually in the custody of the court or an officer thereof if it is 'subject to the control or disposition' of the court."

It must be borne in mind that the issue of the propriety of the orders to disclose which the district court has or intends to make is not directly involved in this appeal. Hence we will not comment on that subject or discuss the decisions on that subject which appear in the briefs. The issue before us is whether Formulabs had a right to intervene under Rule 24(a) (3). If so, intervention is a matter of right. State of Oklahoma v. State of Texas, United States Intervener, 1922, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771; Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145.

■ The law appears to be well settled that if an applicant seeks to intervene under the provisions of Rule 24(a) (2) the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment, Kelley v. Summers, 10 Cir., 1954, 210 F.2d 665, and that the requirement in 24(a) (2) that a party seeking to intervene must be "bound by" the judgment in the main action has been held to mean that such judgment must be res adjudicata as to such party. Sutphen Estates v. United States, 1951, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19.

■ Du Pont and Hartley contend on this appeal that the requirements to intervene under Rule 24(a) (2) are applicable to intervene under the provisions of Rule 24(a) (3). They cite in support of their position Dowdy v. Hawfield, 88

be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property

which is in the custody or subject to the control or disposition of the court or an officer thereof." As amended Dec. 27, 1946, eff. March 19, 1948.

U.S.App.D.C. 241, 189 F.2d 637 (decided March 1, 1951), certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628. In that case the probate court entered its decree admitting to probate a last will and testament after trial by jury of the issues raised by certain parties wherein they charged the will was procured by fraud and undue influence. The issues were determined against such parties, and the order admitting the will to probate was affirmed by the circuit court, and a writ of certiorari to the Supreme Court was denied. Later the same parties filed a motion to intervene and stay the probate proceedings. Such motions were denied by the district court, and on appeal such order was affirmed, the court stating at page 638, of 189 F.2d: "The appellants' interest in the estate was determined to be nothing in the former contest of the issues which are also presented in this case." It is clear that in the Dowdy case those seeking to intervene had no interest in or property rights to be protected in the probate proceedings. The factual situation is entirely different from the instant case. The opinion contains no analysis of Rule 24(a) (3), and the court was in no manner required to pass upon the issue which is involved in this appeal.

Appellees have also called our attention to Pure Oil Co. v. Ross, 7 Cir., 170 F.2d 651, decided November 17, 1948. This case involved an interpleader action by the plaintiff to determine a conflict in claims to money in its possession. The defendants counterclaimed. The money in the possession of the plaintiff was deposited with the court. One Schiff petitioned to intervene, claiming a part of the money. The order denying intervention was reversed by the circuit court. In its opinion the court stated, at page 653:

> "Rule 24(a) (3), Federal Rules of Civil Procedure, 28 U.S.C.A., permits anyone upon timely application to intervene in an action as a matter of right when the applicant is so situated as to be adversely affected by a distribution of property in the

custody of the court or of an officer thereof, and the law is well settled, that to authorize an intervention, the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment."

The opinion contains no analysis of Rule 24(a) (3), and the facts are so different from the situation in the instant case that we derive no help from that decision in solving the problem before us.

The provision contained in Rule 24(a) (2) is entirely different than the language contained in 24(a) (3). Under 24(a) (2) it must appear that the applicant to intervene is or may be bound by the judgment in the main action. There is no such requirement contained in the provisions of Rule 24 (a) (3). Under its plain language any person has the right to intervene if he is so situated as to be adversely affected by a distribution or other disposition of the property which is in the custody or subject to the control or disposition of the court. In our view, Formulabs is so situated. Admittedly it is the owner of the secret formula and secret testing procedures. They are being used by Hartley under a license agreement which forbids disclosure by Hartley. Admittedly Hartley has knowledge of the secret formula and the secret testing procedures. It is a party to the main action pending in the district court. It is subject to the jurisdiction of that court. Under such circumstances, the secret formula and secret testing procedures are subject to the control or disposition of the court. There can be no question that Formulabs will be adversely affected by an order of the court requiring publication of these trade secrets. As stated in Cincinnati Bell Foundry Co. v. Dodds, 1887, 19 Week. Law Bull. 10 Ohio Dec. Reprint 154:

> "The property in a trade secret is the power to make use of it to the exclusion of the world. If the world knows the process then the

property disappears. There can be no property in a process, and no right of protection if knowledge of it is common to the world."

The fact that Formulabs may have the right to seek damages or an injunction against Hartley in the state court is in our view a completely inadequate remedy.

We hold that under the plain language of Rule 24(a) (3) Formulabs had a right to intervene in the main action, and that the district court erred in denying its application.

The order of the district court denying intervention is reversed.