UNITED STATES of America

v.

AMERICAN TELEPHONE AND TELE-
GRAPH COMPANY, et al., Appellees,

MCI Communications Corporation, et
al., Appellants.

In re MCI COMMUNICATIONS CORPO-
RATION and MCI Telecommunications
Corporation, Petitioners.

Nos. 80–1141, 80–1513.

United States Court of Appeals,
District of Columbia Circuit.

Argued 12 June 1980.

Decided 16 Sept. 1980.

Michael H. Salsbury and Theodore R. Tetzlaff, Chicago, Ill., William J. Byrnes, Washington, D. C., for appellants.

George L. Saunders, Jr., Robert D. McLean, Lee M. Mitchell and Harold S. Levy, Washington, D. C., for appellee.

Before TAMM, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Appellants MCI Communications Corp. and MCI Telecommunications Corp. (hereinafter collectively "MCI") seek reversal of an interlocutory discovery order of the district court, issued in the course of a civil antitrust suit brought by the United States against the American Telephone and Telegraph Company (AT&T). The district court's order would require the United States to accede to AT&T's discovery request for certain documents which the Government earlier received from MCI, and in which MCI claims a work product privilege. We have stayed the district court's discovery order pending our decision on this appeal.[1]

Shortly before the district court handed down its discovery order, MCI moved to intervene for the purpose of asserting its claim of work product privilege in the documents requested by AT&T. The district court denied this motion. MCI now appeals both the district court's denial of its intervention motion and the district court's interlocutory discovery order, and in the alternative seeks a writ of mandamus to prevent the transfer of the documents from the Government to AT&T. We hold that MCI should have been allowed intervention as of right, that the denial of intervention is appealable, and that MCI has not waived

---

1. The district court's order is unreported. *See United States v. American Tel. & Tel. Co.*, No. 74–1698 (D.D.C. 22 Jan. 1980), *reprinted in* Appellants' Appendix at 66. This court granted an administrative stay of the district court order on 5 February 1980 and granted MCI's motion for stay pending appeal on 25 April 1980. We further issued a *per curiam* order the day following oral argument of the case, stating that the district court order was reversed, that the case was remanded for entry of an order denying appellees AT&T *et al.* access to the documents in issue, and that the opinion of the court would follow.

any work product privilege that it might have in the requested documents.

## I. BACKGROUND

The controversy in this appeal arises from two antitrust suits with closely related issues, filed against AT&T in two different federal district courts. The first suit was filed against AT&T by MCI in the United States District Court for the Northern District of Illinois on 6 March 1974. MCI charged AT&T with monopolizing and attempting to monopolize the market for long–distance telephone communications. The second suit, which directly concerns us in this appeal, was filed as a civil antitrust action by the United States against AT&T on 20 November 1974 in the United States District Court for the District of Columbia. In claims overlapping those made by MCI, the Government charged AT&T with monopolizing, attempting to monopolize, and conspiring to monopolize markets for telecommunications services and equipment.

Discovery in the District of Columbia suit has extended over a several year period, interrupted at times pending appeals on various issues. The first stage of the controversy that resulted in the present litigation occurred in 1978, when a magistrate supervising the discovery process required AT&T to produce for the Government all materials previously given by AT&T to private plaintiffs in the discovery stage of several private antitrust actions.[2] One of the private plaintiffs to whom AT&T had

given documents was MCI, which had discovered documents from AT&T in the antitrust suit in the Northern District of Illinois.[3] Of the approximately seven million pages of documents that AT&T had produced for MCI in that case, the United States sought to obtain the one and a half million pages that MCI had selected for copying.[4] Over AT&T's objections, the district court ordered AT&T to produce these pages for the United States.[5]

At the same time, the United States pursued a second approach to benefit from MCI's earlier discovery efforts against AT&T. Upon a motion by the United States in the Northern District of Illinois, the judge presiding there over MCI's antitrust suit against AT&T granted a modification of an existing protective order to allow MCI to make available to the United States all discovery materials it had acquired from AT&T in the case, including documents, deposition transcripts, and exhibits referred to in depositions. In addition, this order permitted MCI to furnish to the Department of Justice "any explanatory material or information which would be helpful to an understanding of the items produced."[6] To preserve the confidentiality of any material provided by MCI pursuant to the order, the order prohibited the Government from using such materials for any purpose other than its case against AT&T in the District Court for the District of Columbia.[7] It is this latter, explanatory material, which is in issue in the case at bar.

2. In an earlier opinion in this case, the district court recounted the procedural history of the case in detail. *See United States v. American Tel. & Tel. Co.*, 461 F.Supp. 1314 (D.D.C.1978), *petition for mandamus denied*, No. 78–2050 (D.C.Cir. 21 Oct. 1978).

3. *MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 633 (N.D.Ill.1974).

4. *See United States v. American Tel. & Tel. Co.*, 461 F.Supp. at 1339 & n.75. The United States also sought similar documents related to other suits brought against AT&T by private antitrust plaintiffs, but those documents are not at issue in the present suit. One such antitrust plaintiff, Wyly Corp., originally appealed the district court order in the present case along with MCI, in order to protect Wyly Corp.'s

alleged work product materials from AT&T's discovery efforts. Wyly's appeal has now been settled and dismissed by mutual consent of Wyly and AT&T. *See United States v. American Tel. & Tel. Co.*, No. 80–1142 (D.C.Cir. 8 Apr. 1980).

5. *See United States v. American Tel. & Tel. Co.*, 461 F.Supp. at 1342–43.

6. *MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 633, slip op. at 6 (N.D.Ill. 9 Oct. 1978), *aff'd sub nom. American Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

7. *See id.*

Following the Seventh Circuit's affirmance of this modification of the protective order, MCI furnished the Government the documents, depositions, and exhibits that MCI had discovered from AT&T. MCI also furnished certain documents pertaining to a "database" consisting of computerized abstracts of documents, deposition transcripts, and exhibits received from AT&T during discovery. MCI's counsel had prepared the database for the Northern District of Illinois litigation. The "database documents" furnished by MCI and at issue in the current appeal describe the structure of the database and explain how information can be entered and retrieved. MCI claims to have maintained strictly the secrecy of the database documents from AT&T–although they relate to the original documents discovered from AT&T and furnished the Government–and to have provided them to the United States under the confidentiality provision of the Northern District of Illinois order.

Since AT&T had already given microfilm copies to the Government for documents selected by MCI in discovery, the major additional effect of the modification of the protective order was to permit MCI to produce their depositions and analyses of data for Government counsel's use.[8] Much of this analysis of data and documents was contained in MCI's computerized litigation support system, to which the now disputed database documents pertain. *Unlike the documents and data themselves, none of the analytical or descriptive material in the database documents is admissible as evidence.* But the database documents enable the United States to gain access to the analysis contained in the computerized support system, and might well enable AT&T to determine which documents a plaintiff's counsel would consider important, why counsel might consider them to be important, and what portions of those documents counsel might think are most important for the issues in this suit.[9]

The controversy leading to the district court's discovery order now challenged by MCI began on 23 February 1979, when AT&T served a document request on the United States seeking discovery of the database documents furnished by MCI. The United States raised MCI's work product privilege as a defense against this request. To resolve the privilege issue, the district court submitted the matter to two Special Masters. Upon request by the United States, the Special Masters permitted MCI to participate in the proceedings by submitting a letter asserting its work product privilege and stating that it had turned over the database documents to the Government upon an assurance of confidentiality from the Government.

On 3 August 1979 the Special Masters issued their first opinion and order concerning the database documents.[10] Their decision denied AT&T's discovery request on grounds that the United States had acquired a work product privilege for documents collected by government counsel in preparation for trial, even though the documents had been prepared by a third party, MCI. This rationale did not rest on the separate work product privilege claimed by MCI. On 16 November 1979 Judge Greene vacated the Special Masters' order, finding that the United States had waived any privilege of its own, and remanded the case to them for reconsideration.[11] The Special Masters issued a second opinion on 27 November 1979, holding that the United States could not assert a work product privilege for MCI, and that the database docu-

---

8. *See American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

9. *See* Transcript of Proceedings, Hearing, 14 March 1980, 2:20 p. m. session, *MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 633 (N.D.Ill.), *reprinted in* Appellant's Motion to Supplement Record (17 March 1980).

10. *See United States v. American Tel. & Tel. Co.*, No. 74–1698 (D.D.C. 3 Aug. 1979), *reprinted in* Appellants' Appendix at 10.

11. *See United States v. American Tel. & Tel. Co.*, No. 74–1698, Order at 1 (D.D.C. 16 Nov. 1979), *reprinted in* Appellants' Appendix at 44.

ments should therefore be released to AT&T.[12]

The United States appealed the Special Masters' second opinion to the district court on 7 December 1979. Ten days later MCI communicated its views concerning the work product privilege to the district court by letter.[13] At the same time MCI moved to intervene formally in the Government's suit against AT&T for the limited purpose of asserting its work product privilege.

On 22 January 1980 the district court denied the appeal by the United States and the motion by MCI to intervene, holding that the database documents must be disclosed to AT&T for four reasons:

(1) The Government could not validly claim work product privilege for the documents because it was not a party to the litigation in which the documents were created, and it is not an agent for MCI, the party that created them.

(2) MCI waived any work product privilege it may have had when it disclosed the database documents to the Government.

(3) A Special Master in MCI's suit against AT&T in the Northern District of Illinois had held that work product materials shared by MCI with the Government would lose any privileged status, and MCI had acquiesced in that ruling.

(4) The Government's suggested public policy of encouraging private parties to cooperate with the Government does not outweigh the arguments for disclosure.[14]

The district court denied MCI's intervention motion on the grounds that the court

had already ruled that any work product privilege had been waived, that the court had already considered MCI's claim in this regard, and that "no purpose would be served by permitting formal intervention."[15] On 1 February 1980 the district court denied MCI's motion for reconsideration and stay pending appeal.[16] This court has stayed the required disclosure of the database documents.[17] MCI now appeals the district court's denial of its motion to intervene and the district court's discovery order requiring disclosure of the database documents to AT&T.

## II. INTERVENTION

■ Initially we must decide whether MCI has standing to appeal from the district court discovery order in this case, to which MCI was not a party. The general rule in this circuit is that "one who is not a party to a record and judgment is not entitled to appeal therefrom."[18] Appeal can be taken by an intervenor; but MCI's attempt to become an intervenor was not successful. MCI can have standing to appeal the interlocutory discovery order, then, only if the district court's denial of intervention was erroneous and also appealable. These two issues are resolved by the same inquiry: *a denial of intervention is treated as final and appealable only if the intervening party had a valid claim for intervention as of right or if the district judge abused his discretion in denying permissive intervention.*[19]

Although MCI did not specify whether it sought permissive intervention or interven-

---

12. *See United States v. American Tel. & Tel. Co.*, No. 74–1698 (D.D.C. 27 Nov. 1979), *reprinted in* Appellants' Appendix at 46.

13. *See* Letter from MCI Counsel to District Judge Greene (17 Dec. 1979), *reprinted in* Appellants' Appendix at 85–87.

14. *See United States v. American Tel. & Tel. Co.*, No. 74–1698, slip op. at 1–3 (D.D.C. 22 Jan. 1980).

15. *Id.* at 4 n.7.

16. *United States v. American Tel. & Tel. Co.*, No. 74–1698 (D.D.C. 1 Feb. 1980).

17. *United States v. American Tel. & Tel. Co.*, No. 80–1141 (D.C.Cir. 5 Feb. 1980) (administrative stay); *id.* (D.C.Cir. 25 Apr. 1980) (stay pending appeal).

18. *Moten v. Bricklayers Int'l Union*, 543 F.2d 224, 227 (D.C.Cir.1976) (quoting *United States v. Seigel*, 168 F.2d 143, 144 (D.C.Cir.1948)).

19. *See Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 687–88, 81 S.Ct. 1309, 1311–1312, 6 L.Ed.2d 604 (1961); *Brotherhood of R.R. Trainmen v. Baltimore & O. R. R.*, 331 U.S. 519, 524–25, 67 S.Ct. 1387, 1389–1390, 91 L.Ed. 1646 (1947).

tion as of right,[20] we think it clear from the facts of this case that MCI had a valid argument for intervention as of right under the second criterion of Federal Rule of Civil Procedure 24(a), which provides:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:
>
> .    .    .    .    .
>
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

### A.

To satisfy the standard of rule 24(a)(2), MCI must show that it has an "interest relating to the property or transaction," and that the interlocutory discovery order at issue here "may as a practical matter impair or impede his ability to protect that interest." MCI has certainly alleged an interest in the protection of its work product, since it claims to have created the database documents in anticipation of its litigation against AT&T in the Northern District of Illinois. And this interest will be impaired if the database documents are not protected from AT&T's discovery request.

▆▆▆▆ AT&T argues that MCI has no interest to assert, because it waived any work product privilege it may have had. But the issue of waiver goes to the merits of this case, not to the threshold question of intervention. Intervention here is in essence a question of *standing* for MCI to participate in the case; a determination of the merits of MCI's claim is not appropriate at this threshold stage.[21] For purposes of standing we must accept a party's well-pleaded allegations as valid.[22] MCI has properly pleaded an interest in protecting the requested database documents from discovery, thus satisfying the relevant standard.

We must next determine whether MCI's interest is one "relating to the property or transaction which is the subject of the action." Our resolution of this issue turns on the proper meaning of "action." If this term refers only to the case as a whole, then MCI lacks an interest in the antitrust transaction which forms the subject matter of the Government's suit against AT&T. But if the term encompasses collateral issues in the suit, which may constitute "actions" in themselves, then MCI has an interest in the property or transaction represented by the database documents, which are the subject of the limited discovery action in which MCI seeks to intervene.

Two cases in this circuit support a flexible interpretation of "action." We have held in one case that the provisions of rule 24 "require other than literal application in atypical cases,"[23] and that the present language of rule 24, adopted by amendment to the Federal Rules in 1966, is designed "to liberalize the right to intervene in federal actions."[24] In a second case, we favored intervention for individual issues when appropriate to protect particular interests, with the limited nature of the intervenor's interest determining the scope of intervention that should be allowed, rather than barring intervention entirely.[25]

While neither of these cases dealt specifically with intervention for a collateral discovery issue, the Ninth Circuit addressed this precise issue in *Formulabs, Inc. v. Hart-*

---

**20.** *See* Motion to Intervene. (17 Dec. 1979), *reprinted in* Appellants' Appendix at 64.

**21.** *See SEC v. Dresser Indus., Inc.,* 628 F.2d 1368 (D.C.Cir.1980) (en banc).

**22.** *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

**23.** *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir. 1967).

**24.** *Id.* at 701.

**25.** *See Smuck v. Hobson,* 408 F.2d 175, 179–80 (D.C.Cir.1969).

*ley Pen Co.*[26] That decision allowed a third party to intervene solely in the discovery stage of the case, in order to argue against defendant's disclosure of trade secrets in which the intervenor claimed an interest. The Ninth Circuit held that the district court erred by denying intervention as of right. The court found that the secret formula and secret testing procedures at issue in discovery were properly subject to the control of the court, and that Formulabs would be adversely affected by disclosure.[27]

The *Formulabs* case was decided under an earlier and somewhat narrower version of rule 24(a). When this rule was amended in 1966 the Advisory Committee stated that the earlier wording was "unduly restricted," and that courts had tended to circumvent this restrictive language by applying a flexible and broad interpretation to allow intervention. The Advisory Committee cited *Formulabs* as an example of this trend, and stated that this development was "quite natural."[28] In light of this evidence of the intent of the 1966 amendment, rule 24(a) should be interpreted to allow intervention as of right on collateral discovery issues as in *Formulabs* and the case now before us.

■ To bar intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention. The Supreme Court has stated that intervention aims to protect interests which are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."[29] To be protected by means of intervention, the interest must be "a legal interest as distinguished from interests of a general and indefinite character . . . ."[30] Privileges such as the work product privilege satisfy this definition of legal interest and can be directly lost through the operation of a discovery order. Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer "the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard."[31]

In its supplemental brief, AT&T cites two Supreme Court cases that held against a person asserting a privilege against a subpoena. Neither precedent applies to the present case. *Reisman v. Caplin*[32] refused to permit parties to enjoin the enforcement of a tax summons directed to their work product documents in the hands of a third party; but the Court refused relief on grounds that petitioners had an adequate remedy at law. The Court expressly approved cases from various circuits holding that parties affected by disclosure may intervene before the district court to challenge a summons.[33]

The second case cited to us, *Donaldson v. United States*,[34] denied intervention on grounds that no privilege was available to the party seeking to intervene. In the present case, by contrast, MCI has asserted a claim of privilege which is plausible on its face and must be accepted by us for purposes of determining the intervention issue.

**26.** 275 F.2d 52 (9th Cir. 1960).

**27.** *See id.* at 56.

**28.** *See* Notes of Advisory Committee on Rules, 1966 Amendment, *reprinted in* 28 U.S.C.A. Fed. R.Civ.P. 24 (1972).

**29.** *Smith v. Gale,* 144 U.S. 509, 518, 12 S.Ct. 674, 676, 36 L.Ed. 521 (1892) (quoting *Horn v. Volcano Water Co.,* 13 Cal. 62, 69 (1859)).

**30.** *Radford Iron Co. v. Appalachian Elec. Power Co.,* 62 F.2d 940, 942 (4th Cir. 1933), *quoted in Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 145, 87 S.Ct. 932, 941, 17 L.Ed.2d 814 (1967) (Stewart, J., dissenting).

**31.** *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 145, 87 S.Ct. 932, 941, 17 L.Ed.2d 814 (1967) (Stewart, J., dissenting).

**32.** 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

**33.** *See id.* at 445–49, 84 S.Ct. at 511–513.

**34.** 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

■ We therefore conclude that no Supreme Court precedents preclude intervention for MCI, while the Supreme Court's general statements of the purpose of intervention strongly favor allowing intervention here. The specific evidence of the Federal Rules Advisory Committee's intent, as well as this circuit's precedents discussed above, strongly support intervention. Accordingly we find that MCI has claimed an interest relating to the property or transaction which is the subject of this discovery action, and that the discovery order would impair that interest.

### B.

Rule 24(a) further provides that intervention as of right will not be granted if the applicant's interest is "adequately represented by existing parties." The present case appears to be one where the intervenor's interest is similar but not identical to that of an existing party: as an adversary of AT&T the United States has a similar interest to MCI in withholding the database documents from AT&T, but the United States does not face the identical harm that MCI would suffer if AT&T acquired work product documents useful in the Northern District of Illinois case. In such a situation commentators state that intervention turns on the circumstances of the particular case, but that petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." [35]

■ This court has held that the burden is on those opposing intervention to show that representation for the absentee will be adequate.[36] Intervention should be allowed, moreover, when "there is a serious possibility that the [absentee's] interest may not be adequately represented by any existing party."[37]

Adequacy of representation must be assessed in relation to the specific purpose that intervention will serve. For the purpose of arguing MCI's work product privilege claim before the Special Masters, the United States appears to have provided adequate representation; the Government asserted MCI's claim and successfully requested that the Special Masters allow MCI to present its views directly to them, which MCI proceeded to do by letter.

A serious difference in interests emerged between the United States and MCI, however, when an appeal from the district court ruling came into consideration. Because it naturally had an interest in expeditious trial of its civil antitrust suit against AT&T, *the United States did not share the strong interest MCI had to appeal for protection of its work product privilege.* And in fact the United States chose not to appeal from the district court's order of 22 January 1980.

■ *The decisive question, then, is whether a divergence of interests solely at the appeal stage can justify intervention for the limited purpose of taking an appeal from a lower court ruling.* Commentators cite cases going either way on this question, depending on the particular facts.[38]

This court previously addressed a similar question in *Smuck v. Hobson*, where a named party adequately represented an absentee's interests during litigation before the district court, but did not appeal from an adverse decision of the district court.[39] In that case it was a defendant school board that represented the interests of absentee parents of school children. Our *Smuck v. Hobson* decision found that the school board did not adequately represent the interests of the parents for purposes of appeal because it had become a lameduck board soon

35. 7A C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1909, at 524 (1972).

36. *See Smuck v. Hobson*, 408 F.2d 175, 181 (D.C.Cir.1969).

37. *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C.Cir. 1967).

38. *See, e. g.*, 7A C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1909, at 532 (1972).

39. 408 F.2d 175, 181 (D.C.Cir.1969).

to be replaced.[40] We mentioned the potential that intervening parents might have more "parochial" interests than other parents comprising the board's constituency-but presumably this potential difference existed at trial as much as on appeal. More important for intervention to appeal, we observed that considerations of publicity, cost, and delay might divide the interests of intervening parents from those of the board.[41]

We find the divergence of interests for purposes of appeal even more clear in the present case, since the United States cannot readily pursue its interest in expeditious prosecution of the antitrust suit against AT&T unless it forgoes what might well appear to be a lengthy appeal process to vindicate MCI's claimed privilege. In contrast, MCI has a much stronger interest in the protection of its work product and does not share the Government's interest in expedition. Under *Smuck v. Hobson* this divergence of interests, manifested in the Government's refusal to appeal, is evidence of inadequate representation.

We cannot find that those opposing intervention have carried their burden of showing adequate representation for MCI. As in *Smuck v. Hobson*, we conclude that MCI has shown a "sufficiently serious possibility that [it was] not adequately represented in the decision not to appeal."[42] *This inadequacy of representation exists, however, only with regard to the decision not to appeal; therefore MCI can qualify for intervention of right only for the limited purpose of taking an appeal.* It may not intervene for the purpose of introducing further evidence before the district court, since for that purpose it was adequately represented by the United States. In like manner in *Smuck v. Hobson*, we discussed the possibility of limiting intervention to particular

issues and limiting the intervenor from enjoying all the prerogatives of a party litigant.[43]

Finally, for MCI to have intervention as of right, its application to intervene must be timely. We have held that an untimely motion for intervention, whether of right or permissive, must be denied.[44] While the district court did not expressly make a finding of untimeliness, it did state that by the time of the intervention motion it had considered MCI's claims, and that no purpose would then be served by allowing formal intervention.[45]

■ For the issue of timeliness, much as for the issue of adequate representation, it is important to *consider the purpose for which intervention is granted.* Had MCI sought to intervene for the purpose of presenting evidence or argument following the Special Masters' second order, such intervention would be untimely. But for the limited purpose of taking an appeal–the major aspect of the proceeding for which MCI could reasonably anticipate it might not be adequately represented by the United States and for which it most needed the prerogatives of an intervenor–MCI's motion to intervene at this point was entirely timely. Our *Smuck v. Hobson* decision found intervention appropriate even when application was made only after the district court judgment. The *Smuck* opinion illustrates the relationship between the adequacy of representation and the timeliness of an intervention motion. The board's failure to appeal in *Smuck* made it apparent that intervenors' interests were inadequately represented at the appeal stage.[46] Until this inadequacy of representation came to light, the absentees did not have strong reason to apply for intervention, and might not have been able to obtain intervention of right even had they so moved, since repre-

**40.** *Id.*

**41.** *Id.*

**42.** *Id.* at 182.

**43.** *See id.* at 180.

**44.** *Moten v. Bricklayers Int'l Union*, 543 F.2d 224, 228 (D.C.Cir.1976).

**45.** *See United States v. American Tel. & Tel. Co.*, No. 74-1698, slip op. at 4 n.7 (D.D.C. 22 Jan. 1980).

**46.** *See* 408 F.2d at 181-82.

sentation would still have appeared to be adequate. In *Smuck v. Hobson* we concluded that inadequate representation in the decision whether to appeal created special circumstances that made post–judgment intervention appropriate and timely.[47] MCI similarly made a timely motion to intervene in the present case soon after it became reasonable to expect inadequate representation by the United States, i. e., the interests of the United States in expedition made an appeal unlikely.

In deciding the timeliness of intervention, much must necessarily be left to the discretion of the trial court. We have stated that timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.[48] In the present case, intervention is essential as a means of preserving MCI's rights, since the United States has not taken an appeal. While MCI permitted significant time to elapse between the inception of the discovery controversy and its filing for intervention, the limited purpose for which intervention is granted strongly mitigates this defect. Since intervention is needed only for the purpose of appeal, no delay need be incurred to allow MCI to present evidence and arguments; the only delay is that involved in the present appeal.

Finally, we must take into consideration that a court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention.[49] In light of MCI's strong need to intervene if its privilege claim is to be considered on appeal, and in light of the strong arguments outlined above in favor of MCI's intervention as of right in this case, we find that the district court erred in denying intervention to MCI. Since MCI had intervention as of right, the district court order denying intervention is of course appealable. We reverse on the issue of intervention and allow MCI to intervene for the limited purpose of appealing the district court's discovery order. We therefore proceed to consider the substantive merits of the discovery order just as we would had MCI been allowed to intervene below and take an appeal from that order.

## III. JURISDICTION

In reviewing the merits of the district court's discovery order, we initially face a question of jurisdiction. Under 28 U.S.C. § 1291 we have jurisdiction to review only final orders.[50] The general rule for a witness challenging a discovery order is that he must first refuse to produce the requested documents or testimony and subject himself to a contempt citation before the right to review arises.[51] Under this rule discovery orders are generally regarded as nonfinal and thus nonappealable.

An exception to this rule was created, however, in *Cohen v. Beneficial Industrial Loan Corp.,*[52] in which the Supreme Court held that an interlocutory order may be appealed when "it is the final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it."[53] The Supreme Court recently interpreted this "collateral order" doctrine to mean that the order being appealed must "conclusively determine the disputed question, resolve an important

---

**47.** *See id.*

**48.** *See Moten v. Bricklayers Int'l Union*, 543 F.2d at 224, 228 (D.C.Cir.1976) (citing *Hodgson v. United Mine Workers*, 473 F.2d 118, 129 (D.C.Cir.1972)).

**49.** *See* 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1916, at 573 (1972).

**50.** *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 464–68, 98 S.Ct. 2454, 2456–2457, 57 L.Ed.2d 351 (1978).

**51.** *See Alexander v. United States*, 201 U.S. 117, 121, 26 S.Ct. 356, 357, 50 L.Ed. 686 (1906).

**52.** 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**53.** *Id.* at 546–47, 69 S.Ct. at 1225–1226.

issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."[54]

■ MCI's appeal satisfies all the criteria for the collateral order doctrine. *The issue of MCI's work product privilege is entirely separate from the merits of the antitrust action. Any disclosure of the database documents to AT&T pursuant to a discovery order would conclusively determine the question of privilege by mooting it.* For this reason an appeal from a final judgment in a civil antitrust suit would be entirely ineffective as a means for MCI to assert a privilege that had already been destroyed by disclosure. In discovery cases where a privilege is asserted by a third party, to whom the subpoena or discovery is not directed, the traditional contempt avenue to immediate appeal is unavailable, and the Supreme Court allows immediate review instead under the collateral order doctrine.[55]

The present case presents a fact situation virtually identical to the related case of *American Telephone & Telegraph Co. v. Grady.*[56] In that case, mentioned above in Part I, the U.S. District Court for the Northern District of Illinois granted a modification of an existing protective order to allow the United States access to documents that MCI had discovered from AT&T. Because AT&T was not the object of the document demand and could therefore not possibly refuse disclosure and undergo a contempt citation as a means to appeal, the Seventh Circuit allowed AT&T to appeal under the collateral order doctrine.[57] Now, for AT&T, the shoe is exactly on the other foot.

Finding the present case clearly within the collateral order doctrine as defined by these precedents, we hold the district court's discovery to be within our jurisdiction to review as a final order. There remains a further prudential question whether this court should proceed to consider the merits of the district court's discovery order, or should instead remand for that court to reconsider in light of evidence to be presented by intervenor MCI. Since we have held that MCI's intervention motion is timely for the sole purpose of appeal, and since the district court found that MCI's arguments on waiver of the work product privilege had already been presented to it and taken into consideration, we believe that nothing would be gained by a remand.

## IV. WORK PRODUCT PRIVILEGE AND WAIVER

Because MCI had a right to intervene in the court below for purposes of appeal, and because the district court's discovery order comes within the collateral order doctrine, MCI can now on appeal challenge the discovery order requiring disclosure of the database documents to AT&T. The district court rested its disclosure decision on four alternative grounds:

(1) The Government could not validly claim work product privilege for the documents because it was not a party to the litigation in which the documents were created, and it is not an agent of MCI, the party that created them.

(2) MCI waived any work product privilege it may have had when it disclosed the database documents to the Government.

(3) A Special Master in MCI's suit against AT&T in the Northern District of Illinois had held that work product materials shared by MCI with the Government would lose any privileged status, and MCI had acquiesced in that ruling.

(4) The Government's suggested public policy of encouraging private parties to co-

---

54. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).

55. *See Perlman v. United States,* 247 U.S. 7, 12·14, 38 S.Ct. 417, 419–420, 62 L.Ed. 950 (1918). *See also United States v. Nixon,* 418 U.S. 683, 690–92, 94 S.Ct. 3090, 3098–3099, 41 L.Ed.2d 1039 (1974); *United States v. Hubbard,*

No. 79–2312, slip op. at 45–47 (D.C.Cir. 24 July 1980).

56. 594 F.2d 594 (7th Cir. 1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

57. *See id.* at 596.

operate with the Government does not outweigh the arguments for disclosure.

The third ground of decision has been undermined by a subsequent ruling in the Northern District of Illinois. Judge Grady, presiding over MCI's private antitrust suit against AT&T, ruled on 14 March 1980 that the Special Master's decision did *not* require a finding that MCI had waived its work product privilege in the database documents.[58] Counsel for AT&T argued that the Special Master's decision created law of the case that once work product is given to the Government, it loses its privilege. Judge Grady rejected this argument and accordingly quashed an AT&T subpoena directed at MCI for those documents.[59] Since the Special Master in the Northern District of Illinois case is responsible to the judge presiding over that case, Judge Grady's ruling prevents us from looking to the Special Master's decision as a ground for upholding the discovery order in the present case; *i. e.*, the third ground relied on by the district court is out.

The first ground of decision is substantially equivalent to that relied upon by the Special Masters in their second opinion and order.[60] The Special Masters rested their decision on the fact that AT&T requested the database documents from the United States, the transferee, rather than from the transferor MCI. Since MCI was not a party, it could not assert its privilege. Since the United States had not itself prepared the documents, and the preparer MCI was not a party, one could not claim that the documents were prepared by or *for a party* or by or for the representative of a party, as required by rule 26(b)(3).[61] Thus the district court concluded that:

whatever may be the right of the third parties to assert a work product privilege in litigation in which they may be engaged, copies of the documents in the possession of the government are not entitled to such protection because the government was neither a party to such litigation nor is it an agent of such a party, and it played no part in the creation of the documents.[62]

With the introduction of MCI as an intervenor, however, the complexion of this issue changes entirely. As a party, MCI can now assert its work product privilege directly. Moreover, it can claim that the documents were prepared in anticipation of litigation by a party within the terms of rule 26(b)(3). It might be argued that under rule 26(b)(3) these documents are being requested from a party that did not itself create them. But when both the transferor and the transferee are parties to the action after intervention is granted, we do not believe that discoverability should turn on the formality of whether AT&T requested the documents from transferor or from transferee. Discoverability in this situation should properly turn on whether the transferor MCI waived any work product privilege by giving the documents to the United States. With the district court's first ground thus disposed of, it is to this issue, the second ground of the district court's decision, that we now turn.

The second ground of decision turns on whether MCI waived any work product privilege it might otherwise have had when it handed the database documents to the United States. Rule 26(b)(3) of the Federal Rules of Civil Procedure, as amended in 1970, defines the scope of the work product privilege. Documents can come within this

---

**58.** *See* Transcript of Proceedings, Hearing, 14 March 1980, 2:20 p. m. session, *MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 663, *reprinted in* Appellants' Motion to Supplement Record (20 March 1980).

**59.** *Id.*

**60.** *United States v. American Tel. & Tel. Co.*, No. 74–1698 (D.D.C. 27 Nov. 1979), *reprinted in* Appellants' Appendix at 46.

**61.** *See* pp. 1297–1298 *infra.*

**62.** *United States v. American Tel. & Tel. Co.*, No. 74–1698, slip op. at 1–2 (D.D.C. 22 Jan. 1980), *reprinted in* Appellants' Appendix at 66–67.

privilege if they were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent)." Any claim of work product privilege can be overridden by a "substantial need of the materials" on the part of the requesting party.

. MCI claims that the database documents at issue in this case were prepared by or for MCI's attorneys specifically in anticipation of litigation in MCI's antitrust suit against AT&T in the Northern District of Illinois. On such facts the work product privilege would attach to the documents in the Northern District case and they could not be discovered by AT&T in that case without a showing of substantial need. The question for our consideration is whether the work product privilege applies also in the case between AT&T and the United States in the District of Columbia.

A number of district court opinions have considered whether the work product privilege is waived when a party that created documents in anticipation of litigation provides those documents to another party for use in litigation in a related case. Several of the decisions have turned on whether the transferor has "common interests" with the transferee. In applying this standard courts have held the work product privilege not to be waived by disclosures between attorneys for parties "having a mutual interest in litigation,"[63] or between parties which were potential co–defendants to an antitrust suit,[64] or between attorneys representing parties "sharing such a common interest in litigation, actual or prospective,"[65] or between parties one of whose interests in prospective litigation may turn

on the success of the other party in a separate litigation.[66] The earlier opinions in this line of decisions tended to employ a narrow definition of "common interests," restricted to situations in which the relationship of the parties was similar to that between co–parties in a suit.

One such decision found the work product privilege to be waived in circumstances similar to the present case. In *D'Ippolito v. Cities Service Co.*,[67] the plaintiff in a private suit raised the work product privilege to prevent disclosure of an exhibit, but conceded that it had voluntarily disclosed the exhibit to attorneys in the Antitrust Division of the Department of Justice. Observing that the government was not a party to the lawsuit, the court found that "the disclosure of the document cannot be termed as an interchange of information between counsel on the same side of the litigation."[68] Consequently, the court held the privilege to be waived. This narrow concept of "common interests," limiting it to co–parties, parallels the strict standard applied for waiver of the attorney–client privilege, which we will discuss below.

In contrast to *D'Ippolito*, a more recent decision from the same court, the Southern District of New York, held the work product privilege *not* to be waived by disclosure of trial preparation documents by a private antitrust plaintiff to the government. The court in *GAF Corp. v. Eastman Kodak Co.*[69] found that despite voluntary disclosure of the documents to persons not on the same side of the litigation, the privilege remained intact.[70] Rejecting the *D'Ippolito* standard, the court instead looked first to *the purpose of the work product privilege. This purpose is to protect material from an opposing party in litigation*, not necessarily from the

**63.** *Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 555 (N.D.Ill.1964).

**64.** *See Vilastor–Kent Theater Corp. v. Brandt*, 19 F.R.D. 522–23 (S.D.N.Y.1956).

**65.** *Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 26 F.R.D. 572, 579 (S.D.N.Y.1960).

**66.** *See Stix Prods., Inc. v. United Merchants & Mfgrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y.1969).

**67.** 39 F.R.D. 610 (S.D.N.Y.1965).

**68.** *Id.* at 610.

**69.** 85 F.R.D. 46 (S.D.N.Y.1979).

**70.** *See id.* at 51–52.

rest of the world generally. In light of this purpose, the court held that disclosure to a third party does not waive the privilege "unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary."[71] Waiver would occur, the court elaborated, only if the disclosure "substantially increases" the possibility of an opposing party obtaining the information.[72] Since the disclosure had occurred under a statutory guarantee of confidentiality on the part of the government, the court held the conditions for waiver not to be satisfied.[73]

The opinions in *GAF Corp.* and *D'Ippolito*, both arising out of cases very similar to the present one, follow quite different standards. We do not consider the strict standard of waiver in the attorney-client privilege context, as reflected in *D'Ippolito*, to be appropriate for work product cases.[74] *The attorney–client privilege exists* to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, *to protect the attorney–client relationship.* Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.[75]

By contrast, the *work product privilege* does not exist to protect a confidential relationship, but rather *to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.*[76] The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation. In the leading case on the work product privilege, the Supreme Court stated: "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."[77] A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege. We conclude, then, that *while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney–client privilege, it should not suffice in itself for waiver of the work product privilege.*

We do not endorse a reading of the *GAF Corp.* standard so broad as to allow confidential disclosure to *any* person without waiver of the work product privilege. The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. But "common interests" should not be construed as narrowly limited to co–parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary. When the transfer to a party with such common interests is conducted under a

**71.** *Id.* (citing 8 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2024, at 210 (1970)).

**72.** *Id.* at 52.

**73.** *See id.*

**74.** *See Stix Prods., Inc. v. United Merchants & Mfgrs., Inc.*, 47 F.R.D. 334, 338 (S.D.N.Y.1969).

**75.** *See* Advisory Comm.'s Note, Rule 5–11, Proposed Rules of Evidence, 46 F.R.D. 161, 280–81 (1969); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2016, at 127 & n.71 (1970); *Note, Developments in the Law—Discovery*, 74 Harv.L.Rev. 940, 1044–45 (1961) (hereinafter cited as *Developments*).

**76.** *See Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947); *Developments, supra* note 75, at 1029.

**77.** *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

guarantee of confidentiality, the case against waiver is even stronger.

In the present case, MCI shares common interests with the United States, in the sense that they are proceeding on overlapping antitrust issues against a common adversary, AT&T. The United States and MCI shared common interests in developing legal theories and analyses of documents on which to proceed on those issues where they both made the same antitrust claims against AT&T.[78] Moreover, the Northern District of Illinois court order authorizing the transfer of the database documents also ordered the Government to maintain their confidentiality.[79] This transfer is consistent with the promotion of trial preparation within the adversary system. Further, because of the Government's interests adverse to AT&T on these issues, the transfer poses very little likelihood of AT&T gaining access to the documents through the United States.

In their second opinion and order the Special Masters observed in dictum that the Government and MCI were aligned in interest in light of the facts that "the same transaction is in litigation, the adversary is the same, and the positions of the parties involved in the exchange were substantially identical as against that adversary."[80] They went on to observe: "The exchange seems to us to partake of a consultation on tactics and strategy, the very things the work product privilege is designed to protect."[81]

We believe our holding on the waiver issue furthers the purpose of the work product privilege by protecting attorneys' preparations for trial and encouraging the full-

est preparation without fear of access by adversaries. *The work product privilege rests on the belief that such promotion of adversary preparation ultimately furthers the truth-finding process.* For MCI to contribute the fruit of its analysis to the Government on those issues common to their two cases will further the Government's preparation for trial and eliminate some duplication of effort. The advantages of such sharing led the judge in MCI's Northern District of Illinois case against AT&T to remark, "we believe the court should not only encourage the sharing of discovery in cases with common fact questions but order it on its own motion even where the parties do not suggest it."[82]

We recognize that the truth-finding process might be further enhanced *in the short term* in this particular case if AT&T gained access to the documents in question. In the long run, however, this would discourage trial preparation and vigorous advocacy and would discourage any party from turning over work product to the government.

The Government has the same entitlement as any other party to assistance from those sharing common interests, whatever their motives. This is clearly true in antitrust cases, where Congress has established a policy of private enforcement to supplement governmental action against offenders. This policy should not be thwarted by allowing an alleged antitrust offender to acquire the trial preparations of his private adversaries when they cooperate with Government lawyers in a related suit by the Justice Department. It is important to

**78.** The district court in this case has earlier commented on the commonality of issues between the MCI suit and the Government suit against AT&T. *See United States v. American Tel. & Tel. Co.*, 461 F.Supp. 1314, 1338 n.73, 1340–41 (D.D.C.1978).

**79.** *See MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 633, slip op. at 6 (N.D.Ill. 9 Oct. 1978), *reprinted in* Appellants' Appendix at 77–82, *aff'd sub nom. American Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

**80.** *United States v. American Tel. & Tel. Co.*, No. 74–1698, Opinion and Order of Special Masters at 2 n.3 (D.D.C. 27 Nov. 1979), *reprinted in* Appellants' Appendix at 47.

**81.** *Id.*

**82.** *MCI Communications Corp. v. American Tel. & Tel. Co.*, No. 74 C 633, slip op. at 2–3 (N.D.Ill. 9 Oct. 1978), *reprinted in* Appellants' Appendix at 78–79.

bear in mind that this case involves the sharing of legal analysis and other forms of materials created by attorneys; it does not involve the sharing of evidence. If a person shares *evidentiary* material with the Government, that material is of course subject to discovery by those against whom the Government uses it. But attorney work product, such as the database documents in question here, is not generally admissible as evidence, and should not be any more easily discoverable from the Government than from any other party.

This case thus differs from the typical case involving an informant to the Government, who gives legally useful information that is admissible as evidence or leads to the discovery of evidence. The present case resembles instead the giving of advice by an expert. The database documents prepared by MCI are similar to an expert's analysis of facts in their relation to law. Such expert analysis could be given by anyone, for whatever reason, to the Government for use in a case the Government is litigating, just as MCI did in the present case.

When expert reports are solicited by a party under a paid retainer agreement, the adversary party is generally *not* entitled to discover those reports.[83] If it is fair to deny adversary access to such expert reports, on the theory that such analysis is equally available to the adversary party,[84] then it is equally fair to require AT&T to rest upon its own analysis of the facts in this case as they relate to the antitrust issues involved. No unfair advantage results from the denial of discovery here, since discovery is not necessary to prevent the surprise introduction of evidence at trial. Waiver, the dis-

trict court's second ground of decision, we thus hold inapplicable to this case.

The district court's fourth ground of decision concerned public policy considerations. In response to the Government's assertion of public policy arguments in favor of cooperation between private parties and the Government, the district court found a competing policy of maximum disclosure of relevant material to be controlling, and observed that the Government's policy arguments were better addressed to legislative or rulemaking bodies.[85] If a work product privilege exists, however, and has not been waived under the appropriate standard, then a policy of maximum disclosure cannot in itself form a valid ground for requiring disclosure of the database documents.

We hold therefore that MCI has not waived its work product privilege by disclosing the database documents to the Government, and that MCI as intervenor can raise its claim of work product privilege to defend against AT&T's discovery request. Accordingly the district court's order granting AT&T access to the database documents must be vacated.

We note that AT&T argues that the database documents have never been found to be covered by a work product privilege.[86] During the litigation before the Special Masters and the district court on the waiver issue, it was not resolved whether a work product privilege initially applied to the database documents in the suit before the Northern District of Illinois. The issue has been addressed between AT&T and MCI by the district judge presiding over the Illinois case, and he has ruled the database documents to be work product.[87] Although we

---

**83.** *See, e. g., United States v. 6.82 Acres of Land, More or Less,* 18 F.R.D. 195 (D.N.M. 1955).

**84.** *See Developments, supra* note 75, at 1032–33, 1038 (1961).

**85.** *See United States v. American Tel. & Tel. Co.,* No. 74–1698, slip op. at 3 & n.3 (D.D.C. 22 Jan. 1980), *reprinted in* Appellants' Appendix at 66, 68.

**86.** *See* Brief for Appellees at 3.

**87.** *See* Transcript of Proceedings, Hearing, 14 March 1980, 2:20 p. m. session, *MCI Communications Corp. v. American Tel. & Tel. Co.,* No. 74 C 633, *reprinted in* Appellants' Motion to Supplement Record (20 March 1980). This suit in the Northern District of Illinois has now proceeded to a verdict against AT&T and to the denial of post–trial motions by AT&T. *See* Wall St. J., 31 July 1980, at 5. This does not

do not resolve this issue on this appeal, the Illinois district court order appears to support the work product claim under principles of collateral estoppel, so that the work product issue will be open only if AT&T can convince the district court in this case that collateral estoppel does not apply.[88]

■ Finally, the work product privilege is a qualified privilege which may be overridden by a showing of substantial need by the requesting party. The district court's stated public policy considerations, which we have found unpersuasive, did not include a consideration of substantial need by AT&T.[89] On appeal AT&T has asserted the district court's discretion concerning the applicability of this qualified privilege,[90] but AT&T has made no showing of substantial need on the record. On remand it is of course open to the district court to consider the substantial need argument if AT&T raises such allegation, and if the district court finds that allegation to be raised in timely fashion.

We therefore vacate the order of the district court and remand the case for entry of an order denying discovery of the database documents and for further proceedings not inconsistent with this opinion. The substantive relief requested by MCI's appeal having been thus granted, we dismiss MCI's petition for writ of mandamus as moot.

*So ordered.*

---

eliminate the applicability of a work product privilege to documents pertaining to that case, in light of the appeals and possible new trial yet to come.

**88.** We recognize that there are other issues involving persuasive but nonbinding effect of precedent and law of the case which might be raised below and which we do not decide at this point.

**89.** *See United States v. American Tel. & Tel. Co.,* No. 74–1698, slip op. at 3–4 (D.D.C. 22 Jan. 1980), *reprinted in* Appellants' Appendix at 66, 68–69.

**90.** *See* Brief for Appellees at 33–35.