BERTELSEN v. WHITE, Collector of Internal Revenue.

No. 2787.

Circuit Court of Appeals, First Circuit.

June 15, 1933.

John W. Lowrance, of Boston, Mass. (Dion S. Birney, of Washington, D. C., of counsel), for appellant.

F. F. Korell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., and C. M. Charest, General Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action brought by Bertelsen, receiver of the Crowell & Thurlow Steamship Company, against Thomas W. White, as collector of internal revenue, to recover an alleged overpayment of $50,000 in taxes for the year 1920. In his answer the collector pleaded a general denial; that he was not the proper party defendant; and a former judgment of dismissal in the Court of Claims as a bar to the action. The District Court did not pass upon the issue raised by the general denial or whether the tax collector was the proper party defendant, but held that the suit was barred by the judgment of the Court of Claims and by estoppel in pais.

The action in the Court of Claims was brought July 7, 1926, by the receiver against the United States, and involved, among other issues, the legality of the tax for 1920 against the steamship company; the parties here being in effect the same as there.

In the Court of Claims the receiver sought to recover from the United States $155,906.-71, a portion of an overpayment admitted by the government for the year 1918, but which the Commissioner of Internal Revenue had applied in payment of taxes for other years, to wit, $37,875.07 for 1917, $68,279 for 1919, and $49,752.39 for 1920, all of which applications the receiver alleged were wrongfully and illegally made, as the income and profits taxes for those years were erroneously claimed by the commissioner to be due.

During the pendency of the proceedings in the Court of Claims the receiver offered a settlement with reference to all these items, except the application made for the payment of the tax for 1917, and later a dismissal order was entered in the Court of Claims on a motion in which the receiver asked the court to "dismiss the petition filed July 7, 1926, in said cause, without prejudice, however, to the assertion by the claimant, by suit or otherwise, of its claim to receive the sum withheld and applied to the alleged underpayment by the claimant of the tax for the year 1917, for the reasons, as he shows, that, since the filing of said petition all other matters have been satisfactorily adjusted between the claimant and the United States."

The District Court also found that the Commissioner of Internal Revenue had acted upon the above offer of settlement by assessing the taxes for 1919 and 1920 in accordance therewith and the plaintiff was for that

reason also estopped from maintaining this suit.

From this judgment of the District Court the appeal is prosecuted.

If we assume in the plaintiff's favor that he was not precluded from maintaining this suit either on the ground of res judicata or estoppel in pais, and that he could maintain the same against the collector as the proper party defendant, we regard the judgment of the District Court as correct when the case is considered on its merits.

The merits of the controversy between the parties turn upon the method employed by the commissioner in assessing the normal income tax of the steamship company for the year 1920. In assessing that tax the war-profits and excess-profits tax had first to be computed. The general method of arriving at the war-profits and excess-profits tax is set out in title 3, § 301 (b), of the Revenue Act of 1918 (40 Stat. 1088), which provides:

"Sec. 301. * * * (b) For the taxable year 1919 and each taxable year thereafter there shall be levied, collected, and paid upon the net income of every corporation (except corporations taxable under subdivision (c) of this section) a tax equal to the sum of the following:

"First Bracket.

"20 per centum of the amount of the net income in excess of the excess-profits credit (determined under section 312) and not in excess of 20 per centum of the invested capital;

"Second Bracket.

"40 per centum of the amount of the net income in excess of 20 per centum of the invested capital."

Section 312 (40 Stat. 1091) reads:

"Sec. 312. That the excess-profits credit shall consist of a specific exemption of $3,000 plus an amount equal to 8 per centum of the invested capital for the taxable year."

June 5, 1920, Congress passed the Merchant Marine Act (41 Stat. 988), section 23 (41 Stat. 997 [46 USCA § 878]) of which reads as follows:

"Sec. 23. That the owner of a vessel documented under the laws of the United States and operated in foreign trade shall, for each of the ten taxable years while so operated, beginning with the first taxable year ending after [the enactment of this Act] be allowed as a deduction for the purpose of ascertaining his net income subject to the war-profits and excess-profits taxes imposed by Title III of the Revenue Act of 1918 an amount equivalent to the net earnings of such vessel during such taxable year, determined in accordance with rules and regulations to be made by the [shipping] board: Provided, That such owner shall not be entitled to such deduction unless during such taxable year he invested, or set aside under rules and regulations to be made by the board in a trust fund for investment, in the building in shipyards in the United States of new vessels of a type and kind approved by the board, an amount, to be determined by the Secretary of the Treasury and certified by him to the board, equivalent to the war-profits and excess-profits taxes that would have been payable by such owner on account of the net earnings of such vessels but for the deduction allowed under the provisions of this section. * * * *"

The Crowell & Thurlow Steamship Company, having shown itself entitled to the benefits of this section by having built two new vessels, the Commissioner of Internal Revenue, on October 21, 1926, assessed the excess-profits tax under section 301 (b) of the Revenue Act of 1918, but, instead of taking the total net income of the company as the basis of computation, he ascertained the net income subject to the war-profits and excess-profits tax by deducting from the total net income an amount equivalent to the net earnings of the company's vessels engaged in foreign trade, as authorized by section 23 of the Merchant Marine Act.

The net earnings from foreign trade were $1,392,165.51, which, deducted from the total net income of $1,713,755.57, left $321,590.06 as the net income subject to the war-profits and excess-profits tax. On this basis the war-profits and excess-profits tax imposed by title 3, section 301 (b), was found to be $9,698.45. This amount is accepted by the plaintiff as correct.

The section relating to an assessment of the company's normal income tax is section 230 of the Revenue Act of 1918 (40 Stat. 1075). It provides that upon the net income of every corporation there shall be levied, collected, and paid for each calendar year after 1918 ten per centum of the net income in excess of the credits provided in section 236 (40 Stat. 1080), and among the credits there provided is "the amount of any taxes imposed by Title III [war-profits and excess-profits tax] for the same taxable year."

In assessing the income tax of the company for 1920 the commissioner, in accordance with his construction of sections 230, 236 and 301 (b) of the Revenue Act of 1918 and

section 23 of the Merchant Marine Act, deducted with other items from the total net income of the company, as a credit, the $9,698.45 which had been imposed as a war-profits and excess-profits tax for the year 1920. The following tabulation shows how the commissioner arrived at the total tax which was finally assessed for 1920:

Total excess-profits and war-profits tax... $ 9,698.45
Net income.................... $1,713,755.57
 Less:
Interest on United
 States obligations
 not exempt........ $20,085.05
Profits tax.......... 9,698.45
Exemption ......... 2,000.00 31,783.50

Balance taxable at 10%....... $1,681,972.07
Amount of tax at 10%...................... 168,197.21

 Total tax assessable.................... $177,895.66

The war-profits and excess-profits tax that would have been assessed against the plaintiff but for section 23 amounts to $495,833.77 and the plaintiff claims the assessment of the company's normal income tax should have been as follows, or $48,613.54 less than as assessed by the commissioner:

Total war-profits and excess-profits tax... $ 9,698.45
Net income ................... $1,713,755.57
 Less:
Interest on United
 States obligations
 not exempt ...... $ 20,085.05
Profits tax......... 495,833.77
Exemption ........ 2,000.00 519,918.82

Balance taxable at 10%....... $1,195,836.75
Amount of tax at 10%...................... 119,583.67

 Total tax assessable.................... $129,272.13

This difference of $48,613.54, with interest, the plaintiff here seeks to recover.

 As we understand it, the plaintiff claims that section 23 in no way modifies or affects title 3 of the Revenue Act of 1918 (section 300 et seq.) relating to war-profits and excess-profits taxes; that as to a shipowner taking advantage of its provisions, as well as to others, war-profits and excess-profits taxes are imposed by title 3 on the total net income, but if he complies with section 23 and the rules and regulations of the Shipping Board, he is relieved from paying to the government such part of those taxes as are due to the net earnings of a vessel or vessels engaged in foreign trade; and that, in this case, as the amount of war-profits and excess-profits tax thus imposed would be $495,833.-77, that is the amount that, by sections 230 and 236 of the Revenue Act, should be deducted as a credit from the net income of the company in ascertaining its normal income tax.

The plain wording of section 23, however, warrants no such theory. Title 3, § 301 (b) provides that "there shall be levied, collected, and paid upon the *net income* of every corporation * * * a tax equal to the sum of the following," etc. This applied at the time of the passage of the Revenue Act of 1918 and still applies to every corporation, be it a manufacturer or shipowner. After the enactment of the Merchant Marine Act in 1920 the *net income* of the *ordinary corporation* subject to the war-profits and excess-profits taxes imposed by title 3, § 301 (b) was a sum obtained by taking the gross income and applying the deductions allowed by section 234, title 2 (40 Stat. 1077), while the net income of a shipowner taking advantage of section 23 and subject to such taxes was that sum further diminished by the net earnings of vessels engaged in foreign trade.

In section 23 Congress recognized that the "war-profits and excess-profits taxes" there spoken of were to be "imposed by Title III of the Revenue Act of 1918," and simply changed the amount of the net income upon which these taxes were to be thus imposed. The $9,698.45 was the only tax imposed, that is "levied, collected and paid" by virtue of title 3 and the only tax that could have been deducted as a credit from the net income within the meaning of the express terms of sections 230 and 236 in determining the normal income tax.

To the extent that section 23 altered the method of ascertaining the net income "subject to the war-profits and excess-profits taxes *imposed by Title III* of the Revenue Act of 1918," it modified title 3 of the Revenue Act; and we find nothing in the legislative history of the Merchant Marine Act which would lead to a different construction. It is true that the Senate and House conferees submitted a report recommending an amendment to the Revenue Act in order better to carry out the purpose of section 23 and that this report was rejected. But this rejection was solely on the ground, as stated by the speaker of the House, that "it seems to the Chair clearly that it is not within *their* [the conferees'] jurisdiction, because there is nothing in the Senate amendment that, in the opinion of the Chair, *places these matters in conference."* In other words, it was simply ruled that it was not within the jurisdiction of the conferees to amend the Revenue Act when only the question of an amendment to the Merchant Marine bill proposed by the Senate was submitted to them. Furthermore, no objection was taken to the statement of

Mr. Edmonds, for the House conferees and Committee, that "an amendment inserted [in the Marine Act] by the Senate affecting the Revenue Act * * * must naturally have something to do with the Revenue Act, and we could not make an amendment of that kind unless we did amend or change the Revenue Act," and, as we see it, no exception could have been taken to such a self evident proposition. In any event, as we have shown, section 23, construed in the only way its plain language warrants, modified the Revenue Act of 1918 to the extent required to give effect to that section.

It is also suggested that this interpretation of the sections involved here should not be given as injustice to the taxpaying shipowner would result; and that his total payments of taxes thus assessed would be more than his payment of war-profits and excess-profits taxes and normal income tax computed in the ordinary way. But the money saved from the war-profits and excess-profits tax was not money paid to the government for its benefit but money of the taxpayer invested in new ships for its own benefit; and while the plaintiff's normal income tax is increased by a little less than $50,000, the revenue of the government is, in fact, diminished by the sum of $437,521.78, the taxpayer profiting to that extent over what he would otherwise have had to pay. There can be no injustice in that. Furthermore it is voluntary with the taxpaying shipowner whether section 23 shall be invoked or not.

In his assignments of error and brief the appellant suggests that section 23 of the Merchant Marine Act, if construed as above, is a revenue act; that it originated in the Senate and hence is unconstitutional by virtue of article 1, § 7, clause 1, of the Constitution. While section 23 amends title 3 so far as it relates to certain shipowners that is only an incident to its general purpose, its primary object being "to establish the American merchant marine upon a sound and permanent basis". It is not a bill to raise revenue. United States v. Norton, 91 U. S. 566, 568, 569, 23 L. Ed. 454; Twin City Nat. Bank v. Nebeker, 167 U. S. 196, 17 S. Ct. 766, 42 L. Ed. 134. On the contrary, it diminishes the revenue of the government. Section 23 of itself does not increase the taxpayer's normal income tax. His normal income tax is increased because section 236, title 2, allows as a credit only the amount of tax imposed upon the taxpayer for that year by section 301 of title 3.

The conclusion here reached conforms to the decision of the Board of Tax Appeals of June 14, 1928, in Atlantic & Caribbean Steam Navigation Co. v. Commissioner of Internal Revenue, 12 B. T. A. 606, where the exact question here under consideration was passed upon. In that opinion the board said:

"The two Acts [the Revenue Act of 1918 and the Merchant Marine Act] must be read together. Having complied with the conditions of the Merchant Marine Act, which was effective before any tax for 1920 became due under the Revenue Act, petitioner became entitled to a certain additional deduction in computing its net income subject to tax under Title III. The Revenue Act imposed a tax only upon net income, and the net income of petitioner could not have been properly computed without taking the deduction which the Merchant Marine Act provided should be allowed under the Revenue Act. The tax imposed was to be computed upon this net income, not upon what the income would have been had the Revenue Act stood alone, or had the petitioner not taken the necessary steps to entitle it to this additional deduction. The result in this case is that there was not sufficient net income subject to profits tax to result in the imposition of any tax and consequently in computing net income subject to income tax there was no credit to be claimed on the ground that a profits tax was imposed on petitioner by the Revenue Act."

The judgment of the District Court is affirmed, with costs in this court to the appellee.