W. Henson MOORE, et al., Plaintiffs,

v.

The UNITED STATES HOUSE OF REP-RESENTATIVES, et al., Defendants.

Ron PAUL, Plaintiff,

v.

The UNITED STATES of America, et al., Defendants.

Civ. A. Nos. 82–2318, 82–2352.

United States District Court, District of Columbia.

Dec. 16, 1982.

James L. Kaler, Kaler, Worsley, Daniel & Hollman, Washington, D.C., for Moore, et al.

Dale Curtis, Washington, D.C., for Paul.

Michael L. Murray, Steven R. Ross, Stanley M. Brand, Washington, D.C., for House of Representatives.

M. Elizabeth Culbreth, Michael Davidson, Washington, D.C., for U.S. Senate.

Lawrence A.G. Moloney, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

These consolidated cases, before the Court on plaintiffs' motion for summary judgment and defendants' motions to dismiss, present the threshold question whether plaintiffs, 19 members of Congress, have standing to challenge the constitutionality of the "Tax Equity and Fiscal Responsibility Act of 1982," Pub.L. No. 97–248 ("TEFRA"), which the President signed into law on September 3, 1982. Upon consideration of the supporting documentation, the record as a whole and oral arguments presented by the parties, it is determined that plaintiffs lack standing[1] to maintain these actions and that the actions therefore must be dismissed.

Plaintiffs brought their complaints against the United States,[2] the United States House of Representatives, the United States Senate, and officials of those two bodies, seeking a declaratory judgment that

---

**1.** For this reason other grounds for dismissal advanced by defendants need not be addressed.

**2.** Only plaintiff *Paul* named the United States as a defendant. However, the United States successfully moved to intervene as a defendant in *Moore.*

the actions of Congress in enacting TEFRA infringed upon the prerogatives of the House in contravention of the "origination clause" of the United States Constitution, U.S. Const. art. I, § 7, cl. 1. The origination clause provides:

> All Bills for raising revenue shall originate in the House of Representatives; but the Senate may propose and concur with Amendments as on other Bills.

On November 13, 1981, H.R. 4961, denominated "Miscellaneous Revenue Act of 1981," was introduced in the House of Representatives. After certain amendments, the bill was reported out of the House Ways and Means Committee on December 14, 1981. The House Report estimated that the net effect of the tax provisions of the bill would reduce revenues by 976 million dollars over five years. H.R.Rep. No. 404, 97th Cong., 1st Sess. 9 (1981), U.S.Code Cong. & Admin.News, 1982, p. ———. The bill was passed by the House on December 15, 1981. 127 Cong.Rec. H9607–10 (daily ed., December 15, 1981).

Thereafter, the bill was referred to the Senate Finance Committee, which reported it out on July 12, 1982 under the new name, "Tax Equity and Fiscal Responsibility Act of 1982" (TEFRA). S.Rep. No. 494, 97th Cong., 2d Sess. (1982). Although carrying the House number, the bill that left the Senate Committee, unlike the bill passed by the House, was designed to raise revenues in the amount of 99 billion dollars over three years. The Senate passed this bill on July 19, 1982. 128 Cong.Rec. S8577–8644 (daily ed., July 19, 1982). The difference between the bill as passed by the Senate and as passed by the House prompted the Senate to seek a conference with the House. 128 Cong.Rec. S9307 (daily ed., July 28, 1982).

In response to the Senate's request, plaintiff Rousselot offered this privileged resolution:

> *Resolved*, that the Senate Amendments to the bill, H.R. 4961, in the opinion of the House, contravene the first clause of the seventh section of the first article of the Constitution of the United States, and

are an infringement of the privileges of this House and that the said bill, with amendments be respectfully returned to the Senate with a message communicating this resolution.

128 Cong.Rec. H4776 (daily ed., July 28, 1982). Representative Dan Rostenkowski, Chairman of the Committee on Ways and Means, immediately moved to table the resolution, with 229 members voting yea, 169 voting nay and 36 not voting. Each of the plaintiffs voted against the motion to table. *Id.* at H4776–77. At the direction of this committee, Representative Rostenkowski then moved to send the bill to conference with the Senate. *Id.* at H4777. This motion passed after debate, which included plaintiffs, on the constitutionality of the Senate amended bill. 128 Cong.Rec. H4777–88 (daily ed., July 28, 1982). Each of the plaintiffs voted against the motion to go to conference. *Id.* at H4786–87.

During the following two weeks the constitutional issue was addressed by several Representatives. *See* Statements of Representative Bereuter, 128 Cong.Rec. E3636–37, E3652 (daily ed., Aug. 3, 1982); Representative Dreier, 128 Cong.Rec. E3807 (daily ed., August 11, 1982); Representative Porter, 128 Cong.Rec. E3888 (daily ed., Aug. 13, 1982). On August 17, 1982, a conference bill was reported, substantially similar to the Senate version but including two tax provisions of the House version which the Senate had deleted. *Conference Report to Accompany H.R. 4961,* H.R.Rep. No. 760, 97th Cong., 2d Sess. 267–68 (1982). Plaintiffs in *Moore* promptly filed suit on August 18, 1982.

The next day the constitutional issue was debated further on the House floor. 128 Cong.Rec. H6555 (daily ed., Aug. 19, 1982). Plaintiff Rousselot introduced a second resolution to have the bill returned to the Senate. 128 Cong.Rec. H6555 (daily ed., August 19, 1982). This resolution was also rejected, with 268 members voting yea, 144 voting nay and 22 not voting, in favor of a motion to table. Each of the plaintiffs voted against this motion. 128 Cong.Rec. H6555–6636 (daily ed., Aug. 19, 1982). The

bill was passed by both Houses on August 19, 1982, 128 Cong.Rec. S10946, H6635–36 (daily ed., Aug. 19, 1982), with each of the plaintiffs exercising their voting rights on this legislation. Plaintiff Williams voted in favor of passage. All other plaintiffs voted against passage. *Id.* at H6635–36. Plaintiff Paul filed his action on August 20, 1982. On September 3, 1982, President Reagan signed the bill into law.

■ When voting on a motion to dismiss for want of standing the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). However, even assuming the legal conclusion [3] that TEFRA was enacted in violation of the origination clause of the Constitution, plaintiffs have not demonstrated the injury-in-fact required by Art. III to invoke the judicial power. At a minimum, a plaintiff must show that he personally has suffered an actual or threatened injury which reasonably can be traced to the challenged conduct of the defendant and would likely be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 459 U.S. 464, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

> In this manner does Art. III limit the federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process."

*Id.* (quoting *Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968)). Thus, a court should refrain from adjudicating the constitutionality of an act of a co-equal branch of government unless the claimant has suffered a cognizable injury. *Id.* 102 S.Ct. at 759.

■ The separation of powers concerns which underlie the concept of standing are particularly acute when plaintiffs are members of Congress. Although "there are no special standards for determining Congressional standing questions," *Harrington v. Bush,* 553 F.2d 190, 204 (D.C.Cir.1977) (emphasis deleted), injury-in-fact for a congressional plaintiff "must amount to a disenfranchisement, a complete nullification or withdrawal of a voting opportunity." *Goldwater v. Carter,* 617 F.2d 697, 702 (D.C.Cir. 1979) (*en banc*), *vacated on other grounds,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (*mem.*). *Riegle v. Federal Open Market Committee,* 656 F.2d 873 (D.C.Cir.1981), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1982); *Reuss v. Balles,* 584 F.2d 461, 467 (D.C.Cir.), *cert. denied,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); *see also Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir.1974).

As the legislative history plainly reflects, plaintiffs had ample opportunity to exercise their voting rights and in fact, save for plaintiff Williams, voted their disapproval of TEFRA at every turn. Plaintiffs fully participated in the legislative process which culminated in the passage of the act they now challenge. They were simply outvoted. The argument that plaintiffs' votes were effectively nullified by the Senate's usurpation of their right to originate revenue raising bills, and the House acquiescence therein, is unpersuasive. To support this contention, plaintiffs rely on *Kennedy v. Sampson.* In that case, however, the plaintiff had standing because his successful vote had been nullified by the allegedly illegal pocket veto of the President. But where, as in this case, "Congress itself, and not the Executive, renders any individual legislator's vote ineffective, the courts have no role." *Goldwater v. Carter,* 617 F.2d at 712. *See also Korioth v. Briscoe,* 523 F.2d 1271, 1278 (5th Cir.1975) (state legislator denied standing to challenge the validity of a statute passed over his objecting vote); *McClure v. Carter,*

---

**3.** In its response to plaintiffs' opposition to defendants' motion to dismiss, the United States rightly points out that "standing in no way depends on the merits of plaintiffs' contention that particular conduct is illegal." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

513 F.Supp. 265, 270 (D.Idaho), *aff'd mem. sub nom., McClure v. Reagan,* 454 U.S. 1025, 102 S.Ct. 559, 70 L.Ed.2d 469 (1981) ("Certainly no one would contend ... that the losing senators in any vote should automatically have the right to appeal to a federal court for a determination of the correctness of the result approved by a majority of their colleagues").

In short, plaintiffs speak as a frustrated minority. Unless the institution of Congress itself has suffered injury-in-fact at the hand of the Executive, an individual legislator has no standing to complain of impairment to the effectiveness of his vote. "His injury can only be derivative." *Goldwater v. Carter,* 617 F.2d at 712. Here, Congress specifically considered and rejected the suggestion of any constitutional infirmities in the enactment of TEFRA, and in fact opposes this lawsuit. Judicial interference into this intra-legislative dispute is constitutionally precluded.

Even if plaintiffs' claim of injury to their rights as members of Congress to originate bills for raising revenue could be deemed constitutionally sufficient to confer standing, the doctrine of equitable discretion announced by this Circuit in *Riegle v. Federal Open Market Committee* squarely governs this action and mandates dismissal.

In *Riegle* an individual senator challenged the constitutionality of the section[4] of the Federal Reserve Act which provides for the election of five representatives to the Federal Open Market Committee by the Board of Directors of the Federal Reserve Banks, claiming that the selection of these individuals without submission of their nominations to the Senate deprived him of his constitutional right[5] to advise and consent regarding the appointment of these United States officers. Declining to distinguish between Congressional and private plaintiffs,[6] the court determined that Senator Riegle had standing. Nevertheless, the fundamental constitutional principle of sep-aration of powers required that his action be dismissed. Because suits by Congressmen present "the possibility of thwarting Congress' will by allowing a plaintiff to circumvent the process of democratic decisionmaking," a court should, as a matter of equitable discretion, dismiss a Congressman's action where he "could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute." *Riegle v. Federal Open Market Committee,* 656 F.2d at 881. Application of the *Riegle* doctrine is especially appropriate where a plaintiff's dispute is not with the executive branch but with his fellow legislators. *See Reuss v. Balles,* 584 F.2d at 468. In this way a court may avoid intrusion into the internal functioning of the legislative branch.

In the instant case, plaintiffs must be relegated to their legislative remedies, despite their previous failures to convince their colleagues of the rightness of their views, and no matter how remote their chances for success in the future. "It would be unwise to permit the federal courts to become a higher legislature where a congressman who has failed to persuade his colleagues can always renew the battle." *Riegle v. Federal Open Market Committee,* 656 F.2d at 882.

Before dismissing an action under the *Riegle* doctrine a court must also inquire whether "a similar action could be brought by a private plaintiff." *Id.* Although the *Moore* plaintiffs refuse to discuss this part of the analysis, and refer to it as "baggage", *Moore* plaintiffs' memorandum in opposition to defendants' motions to dismiss at 26, plaintiff Paul argues that "[i]n this instance a private plaintiff has no immediate redress." Plaintiff Paul's opposition to defendants' motions to dismiss at 5. Yet, Representative Paul acknowledges that a taxpayer could challenge the constitutionality of TEFRA by filing for a refund

---

4. 12 U.S.C. § 263(a) (1976).

5. U.S. Const. art. II, § 2 ("appointments clause").

6. *See generally,* McGowan, *Congressmen in Court: The New Plaintiffs,* 15 Ga.L.Rev. 241 (1981).

272

after January 1, 1983. *Id.* Private taxpayer plaintiffs have asserted claims under the origination clause before. *See Rainey v. United States,* 232 U.S. 310, 34 S.Ct. 429, 58 L.Ed. 617 (1914); *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); *Miller v. Roberts,* 202 U.S. 429, 26 S.Ct. 674, 50 L.Ed. 1090 (1906); *Twin City Bank v. Nebeker,* 167 U.S. 196, 17 S.Ct. 766, 42 L.Ed. 134 (1897); *Bertelson v. White,* 65 F.2d 719 (1st Cir.1933); *Hubbard v. Lowe,* 226 F. 135 (S.D.N.Y.1915), *appeal dismissed,* 242 U.S. 654, 37 S.Ct. 12, 61 L.Ed. 547 (1916).

It is, accordingly, this 16th day of December, 1982

ORDERED, that plaintiffs' motion for summary judgment be and it hereby is denied; and it is

FURTHER ORDERED that defendants' motions to dismiss be, and they hereby are, granted, and that these actions stand dismissed.