Bernard S. LEE, Plaintiff,

v.

Clarence M. KELLEY, Cartha DeLoach, William C. Sullivan, John P. Mohr, Executor of the Estate of Clyde A. Tolson, deceased; and Two Unknown Agents, individually and as agents of the Federal Bureau of Investigation, Defendants.

SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE, Plaintiff,

v.

Clarence KELLEY, et al., Defendants.

UNITED STATES of America, Defendant-Intervenor.

Jesse Helms, Counterclaimant-Intervenor,

v.

Gerald CARMEN, Administrator of the General Services Administration, Robert M. Warner, Archivist of the United States National Archives and Records Service and William H. Webster, Director of the Federal Bureau of Investigation, Department of Justice, Defendants in Intervention.

Civ. A. Nos. 76–1185, 76–1186.

United States District Court, District of Columbia.

Oct. 18, 1983.

Wiley A. Branton, Sidley & Austin, William L. Robinson, Lawyers Committee for Civil Rights Under Law, Washington, D.C., for plaintiff.

Asst. U.S. Atty. Royce Lamberth, Washington, D.C., for defendants.

William J. Olson, Smiley, Olson, Gilman & Pangia, Washington, D.C., Lawrence J. Straw, Jr., Smaltz & Neelley, Los Angeles, Cal., for intervenors.

## MEMORANDUM AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

Senator Jesse Helms seeks leave to intervene pursuant to Fed.R.Civ.P. 24(a)(2) in two cases decided by this Court in 1977. In *Lee v. Kelley,* No. 76–1185, and *Southern Christian Leadership Conference v. Kelley,* No. 76–1186 (D.D.C. Jan. 31, 1977), this Court ordered that tapes and transcripts generated by Federal Bureau of Investiga-

tion electronic surveillance of Dr. Martin Luther King be held under seal in the National Archives for a period of fifty years, and that the tapes or their contents not be disclosed except under specific court order. The case is currently before the Court on Senator Helms' motion to intervene and his motion, under Fed.R.Civ.P. 60(b)(5), to vacate or modify the Court's 1977 order.

Senator Helms requests access to the sealed materials before the Senate considers, on October 19, 1983, legislation establishing a national holiday honoring Dr. King. Such legislation has been introduced numerous times in prior sessions of Congress. On August 2, 1983, the House of Representatives passed a King holiday bill and sent it to the Senate for consideration. More than two months later, on October 11, 1983, and barely one week before the Senate is scheduled to vote on the bill, Senator Helms filed this motion for intervention.

Fed.R.Civ.P. 24(a)(2) provides that:

"Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Assuming that Senator Helms' motion is "timely made," *Foster v. Gueroy,* 655 F.2d 1319, 1324 (D.C.Cir.1981),[1] Fed.R.Civ.P. 24(a)(2) requires that the applicant show that he has an "interest relating to the property or transaction" at issue, and that disposition of the action "may as a practical matter impair or impede his ability to protect that interest." Fed.R.Civ.P. 24(a)(2). *See Donaldson v. United States,* 400 U.S.

517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (applicant must assert a "significantly protectable interest"). *See also Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir.1967); *Smuck v. Hobson,* 408 F.2d 175, 177–80 (D.C.Cir.1969). *Cf. United States v. ATT, supra,* 642 F.2d at 1291 (interest inquiry "in essence a question of standing to participate").

Senator Helms claims a "protectable interest" in obtaining the sealed materials because of his "constitutional duty to cast an informed vote on all matters on which he is permitted to vote" as a member of the Senate. Senator Helms contends that this is an "individual interest," relying primarily on the Court of Appeals' 1974 decision in *Kennedy v. Sampson,* 511 F.2d 430 (D.C.Cir. 1974). In that case, the Court held that an individual Senator had standing to challenge the constitutionality of a Presidential pocket veto because the veto rendered his earlier vote on the bill ineffective and deprived him of his constitutional "right to demand or participate in a vote to override the President's veto." *Id.* at 433. The Court observed that the Senator's "stake in the litigation is a quantum of his official influence upon the legislative process." *Id.* at 436. Senator Helms relies on this language to support his claim of an interest in "effectively exercising his vote."

Senator Helms, however, fails to take into account the Court of Appeals' decision in *Harrington v. Bush,* 553 F.2d 190 (D.C. Cir.1977). In that case, a member of the House of Representatives challenged the funding and reporting provisions of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403 *et seq.* (1968), claiming, *inter alia,* that the Act denied him information relevant to his interest in "consider[ing], debat[ing] [and] vot[ing] upon ... Executive requests for appropriations for the

---

1. As noted, Senator Helms did not file this motion until one week before the scheduled Senate vote on the King legislation. Under the circumstances, *see NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973), it appears to the Court that Senator Helms' motion may be untimely. *See Hodgson v. United Mine Workers of America,* 473 F.2d 118, 129 (D.C.Cir.1973); *United States v. ATT,*

642 F.2d 1285, 1294–95 (D.C.Cir.1980). However, because "a court should be more reluctant to deny an intervention motion on grounds of timeliness if it is intervention as of right than if it is permissive intervention," *id.* at 1295, the Court will consider whether Senator Helms' application satisfies the second requirement of Fed.R.Civ.P. 24(a)(2).

Agency." *Id.* at 201. Furthermore, the Congressman sought the information to enable him to be a "more effective participant in the appropriations process." *Id.* at 202.

The Court held that the Congressman lacked standing to maintain the suit and narrowly limited the applicability of *Kennedy v. Sampson.* The *Kennedy* rationale does not support standing where the Congressman "relies on uncertainty due to the lack of information as the injury to his future votes." *Id.* at 211. Rather, the "concern expressed in *Kennedy* over injury to a future vote" is limited to situations where the "future vote in question [is] a constitutionally prescribed followup to the vote *already cast* on the same precise legislative bill." *Id.* (emphasis supplied). In view of *Harrington v. Bush,* Senator Helms' reliance on the *Kennedy* decision is misplaced; he cannot point to the *past* "nullified vote" necessary to invoke the *Kennedy* principle. *See also Goldwater v. Carter,* 617 F.2d 697 (D.C.Cir.1979) (*en banc*), *vacated on other grounds,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979).

Further discussion of the requirements for intervention is unnecessary. Even if it is concluded that Senator Helms asserts a sufficient "interest" for intervention purposes, and that he satisfies the other requirements of Fed.R.Civ.P. 24(a)(2), this Court must refuse his request for judicial relief. In two recent cases, *Riegle v. Federal Open Market Committee,* 656 F.2d 873 (D.C.Cir.1981), *cert. denied* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 616 (1981), and *Vander Jagt v. O'Neill,* 699 F.2d 1166 (D.C. Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983), the Court of Appeals considered the "separation of powers problems inherent" in cases where "individual members of the legislative branch", *Harrington v. Bush, supra,* 553 F.2d at 214, seek relief in federal court. In *Riegle v.*

*Federal Open Market Committee,* the Court concluded that the standing, ripeness, and political question doctrines are incapable of "reflecting the prudential concerns raised by congressional plaintiff suits." 656 F.2d at 880–81. Consequently, the Court announced a doctrine of "circumscribed equitable discretion." In cases where the Congressional plaintiff "alleges an injury which could be substantially cured by legislative action," this standard "counsel[s] judicial restraint:"

"[I]t is in these cases that the plaintiff's dispute appears to be primarily with his fellow legislators. In these circumstances, separation of powers concerns are most acute. Judges are presented . . . with the possibility of thwarting Congress' will by allowing a plaintiff to circumvent the processes of democratic decisionmaking." *Id.* at 881. *See also Vander Jagt v. O'Neill, supra,* 699 F.2d at 1168.

Senator Helms' attempt to intervene in effect represents a "dispute with his fellow legislators." In his supporting papers, Senator Helms emphasizes what he views as an inadequate factfinding process in the Senate: because the *"Senate leadership* waived the normal rules," *"no hearings* have been conducted concerning the proposed legislation in order to inform the Senators of facts either to justify or to defeat the passage of this legislation." Helms Memorandum of Points and Authorities at 5 (emphasis supplied). "No Senate committees have been charged with the responsibility to investigate Dr. King." Helms Supplemental Memorandum of Points and Authorities at 6. By intervening in this case to obtain the King surveillance materials, Senator Helms seeks to perform the investigative function of the committee hearings the Senate leadership decided to forego.[2]

---

2. By noting the absence of Senate hearings on the bill, Senator Helms acknowledges the principal role of committees in exercising the investigatory powers of the Congress. *See* 2 U.S.C. § 192 (1977) (establishing contempt penalty for failure to testify before authorized committee); *Rules and Manual of the United States Senate* § 26.1, p. 14 (1979) (authorizing committees

"by subpoena *or otherwise* [to require] . . . the production of . . . correspondence, books, papers, and documents") (emphasis supplied); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 505, 95 S.Ct. 1813, 1822, 44 L.Ed.2d 324 (1975) (subcommittee subpoena power necessary for it "to do the task assigned to it by Congress"). Indeed, this Court in 1977

■ It is not for this Court to review the adequacy of the deliberative process in the Senate or to question decisions of the Senate leadership. *Cf. Vander Jagt v. O'Neill, supra,* 699 F.2d at 1176; *Metcalf v. National Petroleum Council,* 553 F.2d 176, 188 (D.C.Cir.1977). To conclude otherwise would represent an "obvious intrusion by the judiciary into the legislative arena." *Riegle, supra,* 656 F.2d at 882. Senator Helms, of course, is not prevented from entering the "legislative arena;" he can argue to the Senate that the sealed materials should be obtained and considered by a committee before a vote. In any event, the proper forum for this contention is the Senate, for "[i]t would be unwise to permit the federal courts to become a higher legislature where a Congressman who has failed to persuade his colleagues can always renew the battle." *Id. See also Sanchez-Espinoza v. Reagan,* 568 F.Supp. 596, 600–01 n. 5 (D.D.C.1983); *Crockett v. Reagan,* 558 F.Supp. 893, 902–03 (D.D.C.1982); *Moore v. United States House of Representatives,* 553 F.Supp. 267, 270–71 (D.D.C.1982) (all applying *Riegle* equitable discretion doctrine).

■ In view of these considerations, the Court concludes that Senator Helms' attempt to obtain the sealed materials must be rejected. Senator Helms' application for intervention does not satisfy the "interest" requirement of Fed.R.Civ.P. 24(a)(2). More importantly, separation-of-powers principles require this Court to exercise its equitable discretion and deny relief in these circumstances. *See Vander Jagt v. O'Neill, supra,* 699 F.2d at 1177.

Accordingly, Senator Helms' motions to intervene and to vacate or modify the January 1977 order are denied.

permitted a properly authorized committee, the House Select Committee on Assassinations, access to a limited portion of the King surveillance materials at issue here. Senator Helms, however, does not appear here on behalf of a committee authorized to consider the King legislation. Rather, he appears as an individual Senator, without Senate authorization, in what is undeniably an investigatory role. Although Congress' investigatory power is very broad, *Watkins v. United States,* 354 U.S. 178, 187, 77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273 (1957), the "principle is important that disclosure of information can only be compelled by authority of Congress, its committees or subcommittees, *not solely by individual members...*" *Exxon Corp. v. FTC,* 589 F.2d 582, 592–93 (D.C.Cir. 1978). Moreover, the Fifth Circuit refused to permit two members of the House of Representatives to intervene in a private suit and seek materials held under a protective order, on the ground that the Congressmen "failed to obtain a House Resolution or any other similar authority before they sought to intervene" in the case. *In re Beef Industry Antitrust Litigation,* 589 F.2d 786, 791 (5th Cir.1979). *Exxon Corp.* and *In re Beef Industry* illustrate the fundamental importance attached to proper consideration and authorization of formal investigatory efforts by Members of Congress. *See Gojack v. United States,* 384 U.S. 702, 86 S.Ct. 1689, 16 L.Ed.2d 870 (1966); *Watkins v. United States, supra. See generally* Nowak, Rotunda & Young, *Constitutional Law* 248–50 (2d ed. 1983). Senator Helms cannot simply rely on his "[e]lection to the Congress," *Exxon Corp. v. FTC, supra,* 589 F.2d at 593, as the basis for an order by this Court ordering public disclosure of sensitive materials resulting from an FBI electronic surveillance program.