**SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE, (SCLC), a Georgia non-profit corporation**

v.

**Clarence M. KELLEY, et al., Senator Jesse Helms, Appellant.**

**Bernard S. LEE**

v.

**Clarence M. KELLEY, et al., Senator Jesse Helms, Appellant.**

**Nos. 83–2141, 83–2142.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1984.

Decided Nov. 6, 1984.

As Amended Nov. 6, 1984.

7. *See supra* note 1.

Lawrence J. Straw, Jr., Los Angeles, Cal., of the Bar of the Supreme Court of California pro hac vice, by special leave of the court, with whom William J. Olson, Washington, D.C., was on the brief, for appellant.

R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellees Clarence M. Kelley, et al.

William L. Robinson, Washington, D.C., with whom Norman J. Chachkin and Wiley A. Branton, Washington, D.C., were on the brief, for appellees Southern Christian Leadership Conference, et al.

Before WRIGHT and WALD, Circuit Judges, and McGOWAN, Senior Circuit Judge.

PER CURIAM:

In this case, we review the District Court's denial of a United States Senator's motion to intervene under Federal Rule of Civil Procedure 24(a)(2). Because of the sequence of events in Congress and in the courts, the case raises questions of timeliness and mootness. Because the party seeking intervention is a member of Congress, the case also raises questions of congressional standing. We affirm denial of the motion for intervention because the movant lacks a protectable interest sufficient to confer standing.

The appellant, Senator Jesse Helms, seeks intervention as of right in the cases of *Lee v. Kelley,* No. 76–1185 (D.D.C. Jan. 31, 1977), and *Southern Christian Leadership Conference* (SCLC) *v. Kelley,* No. 76–1186 (D.D.C. Jan. 31, 1977), which arose out of the FBI's electronic surveillance of Dr. Martin Luther King, Jr., during the 1960's. On January 31, 1977, the District Court entered an order dismissing as time-barred Mr. Lee's and the SCLC's claims for damages. This left pending before it the plaintiffs' further claim for equitable relief in the form of a judgment directing that all of the tapes in issue be destroyed—a claim not subject to the time limitation provisions of the D.C.Code.

At this point discussion between the parties apparently resulted in a willingness on the part of plaintiffs to modify their demand for destruction to a sealing for 50 years, with any disclosure to be made only upon the order of the court—a solution apparently also acceptable to the defendants. In this posture of the case, the District Court, as it appears clearly to have had jurisdiction to do, entered the judgment sealing the records, which the parties did not appeal. It is this judgment that movant Helms now seeks to challenge.

On August 2, 1983, the House passed H.R. 3706, which designated Dr. King's birthday as a national holiday beginning in 1986. 129 Cong.Rec. H6235, H6268 (daily ed. Aug. 2, 1983). The next day, the Senate placed the bill on its calendar. *Id.* S11,441 (daily ed. Aug. 3, 1983). On October 11, 1983, Senator Helms moved to intervene in *Lee* and *SCLC* to obtain access to the tapes, so as to better inform his and the Senate's vote. Appellant's Appendix (hereinafter "App.") at 124. On October 18, 1983, the District Court, 99 F.R.D. 340 denied his motion. App. at 257. Senator Helms then filed a petition for mandamus requesting essentially the same relief as his motion to intervene. This court denied the petition for mandamus.

On October 19, 1983, the Senate passed H.R. 3706. 129 Cong.Rec. S14,138 (daily ed. Oct. 19, 1983). Two weeks later, the President signed the bill into law as Pub.L. No. 98–144, 97 Stat. 917. 19 Weekly Comp. Pres.Doc. 1511 (Nov. 2, 1983).

The relevant portion of Federal Rule of Civil Procedure 24(a)(2) states:

Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he

is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.... .

We may overturn the District Court's denial of intervention only if it has abused its discretion. *See, e.g., Natural Resources Defense Council v. Costle,* 561 F.2d 904, 907 (D.C.Cir.1977); *Virginia v. Westinghouse Electric Corp.,* 542 F.2d 214, 216 (4th Cir.1976).

## I

Senator Helms moved for intervention some six years after judgment. The District Court raised, but did not rule definitively on, the timeliness question: "[I]t appears to the Court that Senator Helms' motion may be untimely." *Lee* and *SCLC,* Nos. 76–1185 and 76–1186, slip op. at 2 n. 1, App. at 257, 259 (D.D.C. Oct. 18, 1983) (citations omitted). The District Court would have been within its discretion had it denied the motion to intervene as untimely, but did not abuse its discretion by proceeding to the merits.

"Timeliness is to be determined from all the circumstances." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973) (footnote omitted). Of particular importance are the time elapsed since the inception of the suit, the purpose of the intervention, the degree to which intervention is necessary to preserve the applicant's rights, and the probability of prejudice from the intervention to those already parties. *United States v. AT & T,* 642 F.2d 1285, 1295 (D.C.Cir.1980).

■ Considering all the circumstances, an explicit finding of untimeliness would have been well within the District Court's

discretion. Its decision to proceed nonetheless to the merits reflects a commendable willingness to consider all the applicant's arguments. *See generally McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1073 (5th Cir.1970) (courts reluctant to dismiss intervention as of right even if dismissal of permissive intervention would be clearly warranted). We follow the District Court's course and proceed to consider whether Senator Helms has standing.[1]

## II

Rule 24(a)(2) requires the intervenor to demonstrate "an interest relating to the property or transaction which is the subject of the action." The rule impliedly refers not to *any* interest the applicant can put forward, but only to a legally protectable one. *See Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (applicant must demonstrate "significantly protectable interest"). Such a gloss upon the rule is in any case required by Article III of the Constitution. *See Allen v. Wright,* —— U.S. ——, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984) (discussing limits to standing); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (discussing "zone of interest" requirement). We therefore turn to the question of standing.

■ Senator Helms argues that his duty as a member of Congress is to "cast an intelligent and informed vote" and, more particularly, that the Speech or Debate clause, U.S. Const. Art. I, § 6, both gives him the right to seek information and prevents the judiciary from interfering in the

---

1. Senator Helms seeks to inform himself and the Senate on matters related to the wisdom of congressional recognition of Dr. King's birthday. Because Congress has enacted the bill generating that debate, the case may well be moot. There is, however, the possibility that the controversy here is "capable of repetition yet evading review." *See Sosna v. Iowa,* 419 U.S. 393, 399–403, 95 S.Ct. 553, 557–559, 42 L.Ed.2d 532 (1975) (discussing history of doctrine with particular application to class actions); *City of Los Angeles v. Lyons,* 461 U.S. 95,

103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (when suit at issue is not a class action, doctrine "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality"). As the issue of mootness was not before the District Court—which ruled on Senator Helm's motion for intervention the day before the Senate vote that passed the bill—and as we can affirm the District Court on the grounds upon which it relied, we do not here rule upon the mootness issue.

legislative process by limiting the information available to Congress. Our holding in *Harrington v. Bush,* 553 F.2d 190 (D.C.Cir. 1977), requires us to reject Senator Helms's arguments and to deny him standing.

*Harrington* involved a congressman who brought suit against the Central Intelligence Agency (CIA) in an effort to prohibit its expending funds on various allegedly illegal activities. Through a number of statutes, Congress voted to exempt the CIA from the usual disclosures required to obtain congressional funding. *Harrington,* 553 F.2d at 194–96. Representative Harrington alleged that the CIA could keep its expenditures secret only to the extent that its actions did not exceed its delegated authority. He asserted that the CIA's secrecy regarding expenditures resulted in injuries to "his rights and interests as a Congressperson to participate in the legislative process." *Id.* at 200. "The reasoning behind this claim is that, since appellant could be a more effective participant in the appropriations process if he had access to the CIA funding and reporting information that he seeks, the denial of that information must constitute a significant injury." *Id.* at 202–03.

This court held that Representative Harrington's asserted injury was insufficiently concrete to create standing, especially since his dispute was essentially with Congress for failing to change the CIA's unique status in the appropriations process rather than with the CIA, *id.* at 214. Unlike *Kennedy v. Sampson,* 511 F.2d 430 (D.C. Cir.1974), which granted standing to an individual congressman who asserted the President had attempted to give effect to an action unconstitutionally treated as a "pocket veto," Representative Harrington did not allege the *nullification* of a particular vote but rather a need for *informa-*

*tion* on a series of votes, past and present. 553 F.2d at 211–12.

This case has many similarities to *Harrington.* Senator Helms, like Representative Harrington, seeks access to information to guide him in his duties as legislator. Senator Helms's vote, similar to the vote in *Harrington* and unlike that involved in *Kennedy,* was not nullified but rather cast in the absence of certain information.[2] And just as a majority of Congress might have restructured its statutory scheme regarding the CIA to the satisfaction of Representative Harrington but did not do so, the Senate or one of its committees might have sought the information desired by Senator Helms, or postponed consideration of the bill until it attempted to obtain such information, but did not do so. Indeed, when a committee of the House sought information relevant to its study of Dr. King's assassination, access to the FBI materials was granted. Order, *Lee* and *SCLC,* Nos. 76–1185 and 76–1186, App. at 89 (D.D.C. Nov. 14, 1978).

Senator Helms seeks to distinguish his case from *Harrington* by asserting the Speech or Debate clause as a specifically elucidated constitutional grounding for his claims. If Senator Helms could validly point to a specific constitutional power of congressmen at issue here, his case would be significantly strengthened. *See, e.g., Moore v. United States House of Representatives,* 733 F.2d 946 (D.C.Cir.1984) (congressman relied on requirement that all bills raising revenue must originate in House); *Goldwater v. Carter,* 617 F.2d 697 (D.C.Cir.) (*en banc*) (congressman relied on textual requirement that two-thirds of Senate must approve treaties), *vacated,* 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979) (memorandum opinion) (basing decision on ripeness and political-question doctrines). Here, however, Senator Helms

---

**2.** In *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1168–69 (D.C.Cir.1983), this court rejected this distinction as foreclosed by *Riegle v. Federal Open Market Committee,* 656 F.2d 873 (D.C.Cir.1981). We consider the distinction here, however, only as another indicator of the similarity between *Harrington* and this case. The crucial points for

our holding on standing are the inappropriateness of using the Speech or Debate clause as a basis for standing here, *see infra,* and Harrington's still-valid lesson that generalized complaints of injury without any textual grounding are insufficient to support standing.

does not assert an interest protected by the Constitution.

The purpose of the Speech or Debate clause is to shield members of Congress sued *by* others based on the members' remarks, not to serve as a sword to assist members of Congress *suing* others. We quote the clause in full:

> [Members of Congress] shall in all Cases, except Treason, Felony, and Breach of the Peace, be Privileged from Arrest during their attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other place.

U.S. Const. Art. I, § 6; *see Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). In *McSurely v. McClellan,* 553 F.2d 1277 (D.C.Cir.1976) (*en banc*), this court extended the clause's protection to actions outside the floor of Congress, but still only as protection against suit rather than as aid to a congressman suing others.

■ To the extent that Senator Helms seeks the information on behalf of himself, then, we must deny him standing. To the extent that Senator Helms asserts that he seeks the information on behalf of the Senate, his assertion is contradicted by the actions of the Senate. The Senate defeated a motion to send the bill to committee. 129 Cong.Rec. S14,013 (daily ed. Oct. 18, 1983). It also defeated, by a vote of 3 in favor to 90 against, an "amendment" to H.R. 3706 requiring the Senate, before voting on the bill, to seek access "by all available legal means, including but not limited to subpoena," to the documents at issue in *Lee* and *SCLC. Id.* at S14,043 (text of amendment), S14,050 (vote).[3]

*Affirmed.*

---

**3.** The District Court did not explicitly hold, though it strongly suggested, that Senator Helms asserted no protectable interest. *Lee* and *SCLC,* Nos. 76–1185 and 76–1186, slip op. at 3–4, App. at 260–61 (D.D.C. Oct. 18, 1983). It did conclude that, even in the presence of a protectable interest, the doctrine of circumscribed equitable discretion prohibited the granting of re-

lief. *Id.* at 4–8, App. at 260–65. Having here explicitly found that Senator Helms lacked a protectable interest and thus lacked standing, we need not reach the question of whether the doctrine of circumscribed equitable discretion would have provided justification for the denial of the motion to intervene even if the District Court had found a protectable interest.