CITY OF CLEVELAND,
OHIO, Petitioner,

v.

NUCLEAR REGULATORY COMMIS-
SION and The United States of
America, Respondents,

Cleveland Electric Illuminating Company,
Ohio Edison Company, Toledo Edison
Company, City of Brook Park, Ohio, In-
tervenors.

OHIO EDISON COMPANY, Petitioner,

v.

NUCLEAR REGULATORY COMMIS-
SION and The United States of
America, Respondents,

City of Cleveland, Ohio, Intervenor.

CLEVELAND ELECTRIC ILLUMINAT-
ING COMPANY and The Toledo Ed-
ison Company, Petitioners,

v.

NUCLEAR REGULATORY COMMIS-
SION and The United States of
America, Respondents,

CITY OF CLEVELAND,
OHIO, Intervenor.

CITY OF CLEVELAND,
OHIO, Petitioner,

v.

NUCLEAR REGULATORY
COMMISSION,
Respondent.

Nos. 92–1532, 93–1665, 93–
1672 and 93–1673.

United States Court of Appeals,
District of Columbia Circuit.

March 18, 1994.

D. Biard MacGuineas and Bennett Boskey, Washington, DC, attorneys, were on the Motion for Leave to Intervene filed by Alabama Electric Cooperative, Inc.

Gerald Charnoff and Mitchell S. Ross, Washington, DC, attorneys, were on the Opposition to the Motion for Leave to Intervene filed by petitioner Ohio Edison Company.

Before: SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

■ Alabama Electric Cooperative, Inc. (AEC) moves for leave to intervene in these proceedings concerning the antitrust conditions included·in the operating licenses for two nuclear power plants. Because AEC has no economic relationship to the power plants and because AEC's concern about the precedential effect of an adverse decision is not

sufficient to confer standing, we deny the motion for leave to intervene.

## I.

Ohio Edison Company, Cleveland Electric Illuminating Company, and Toledo Edison Company are part owners of the Perry and Davis–Besse Nuclear Power Plants. In 1987 and 1988, the companies asked the Nuclear Regulatory Commission (NRC) to suspend the antitrust conditions included in the plants' operating licenses on the ground that the actual cost of electricity from the plants was higher than the cost of electricity from alternative sources. Rejecting the companies' narrow focus on cost comparisons, the NRC's Atomic Safety and Licensing Board denied their requests on November 18, 1992. The Board's order became final agency action on August 3, 1993, when the time for the NRC to act on the companies' petitions for review expired without the Commission granting the petitions in whole or in part. These petitions followed.[1]

AEC does not operate in petitioners' geographic market or have any other economic relationship with petitioners or their direct competitors. In the 1970s and early 1980s, however, AEC did lead a successful effort to have antitrust conditions included in the operating license for Alabama Power Company's Joseph M. Farley Nuclear Plant. *See Alabama Power Co. v. NRC*, 692 F.2d 1362 (11th Cir.1982), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). In light of AEC's experience in this area, the Atomic Safety and Licensing Board granted AEC discretionary intervention in the agency proceedings concerning the Perry and Davis–Besse plants. However, the Board denied AEC's motion to intervene as of right for lack of standing.

AEC now moves for leave to intervene in the proceedings before this court under 28 U.S.C. § 2348. Section 2348 provides:

> The Attorney General is responsible for and has control of the interests of the Government in all court proceedings under this chapter. The agency, and any party

in interest in the proceeding before the agency whose interests will be affected if an order of the agency is or is not enjoined, set aside, or suspended, may appear as parties thereto of their own motion and as of right, and be represented by counsel in any proceeding to review the order. Communities, associations, corporations, firms, and individuals, whose interests are affected by the order of the agency, may intervene in any proceeding to review the order.

AEC asserts that it should be allowed to intervene in support of the agency because petitioners' claims are "comparable to those which might at some time be asserted by Alabama Power Company to open up NRC's order protecting AEC in the *Alabama Power* case," AEC would thus be harmed by any adverse decision in these cases, and such a decision "might even provoke Alabama Power Company into seeking to open up that order." Reply to Opposition to Motion for Leave to Intervene at 2. Ohio Edison opposes the motion on the ground that AEC lacks Article III standing.

## II.

We have not previously specifically decided whether a movant for leave to intervene in proceedings before this court under § 2348 must have Article III standing when there is a live case or controversy between the parties already in the suit. *Cf. Aeronautical Radio, Inc. v. FCC*, 983 F.2d 275, 283–84 (D.C.Cir.1993) (holding that intervenor must have Article III standing to continue suit if court lacks jurisdiction over action brought by original parties). We have, however, addressed the standing requirement with respect to intervention as of right in district court proceedings under Fed.R.Civ.P. 24(a)(2).

Rule 24(a)(2) allows intervention as of right

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant

---

1. The City of Cleveland petitions for review of related orders in the remaining consolidated cases. AEC moved for leave to intervene before these cases were consolidated, however, and AEC did not seek leave to intervene in the City of Cleveland's petitions.

is so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In *Southern Christian Leadership Conference v. Kelley,* 747 F.2d 777 (D.C.Cir.1984), the original parties had settled their litigation in district court by agreeing that certain tapes concerning Martin Luther King would be sealed for 50 years, with disclosures only by court order. Six years after the district court entered the sealing order, Senator Jesse Helms sought access to the tapes in order to cast an informed vote on the bill making King's birthday a federal holiday. He therefore moved for leave to intervene under Rule 24. In affirming the denial of Helms's motion, we stated:

Rule 24(a)(2) requires the intervenor to demonstrate "an interest relating to the property or transaction which is the subject of the action." The rule impliedly refers not to *any* interest the applicant can put forward, but only to a legally protectable one. *See Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) (applicant must demonstrate "significantly protectable interest"). Such a gloss upon the rule is in any case required by Article III of the Constitution. *See Allen v. Wright,* [468] U.S. [737, 750–52], 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984) (discussing limits to standing); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (discussing "zone of interest" requirement).

747 F.2d at 779 (original emphasis).

■ *Kelley* establishes that a movant for leave to intervene under Rule 24(a)(2) must have Article III standing to participate in proceedings before the district court. *See also Cook v. Boorstin,* 763 F.2d 1462, 1470 (D.C.Cir.1985) ("[A]n intervenor of right, just like an ordinary plaintiff, must have standing."). Although not expressly stated in *Kelley,* the underlying rationale for this requirement is clear: because a Rule 24 intervenor

seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties. Intervenors in proceedings before this court under § 2348 likewise enjoy many of the same rights afforded the original parties. For example, intervenors may file briefs, participate in oral argument with the consent of the party they support, and, most important, petition for rehearing and petition the Supreme Court for writs of *certiorari. Cf. Diamond v. Charles,* 476 U.S. 54, 68–71, 106 S.Ct. 1697, 1706–1708, 90 L.Ed.2d 48 (1986) (dismissing appeal because Rule 24 intervenor was sole appellant and he lacked standing). Thus, absent a material distinction between *Kelley* and the present case, AEC should also be required to demonstrate Article III standing.

AEC does not address *Kelley* directly. Rather, relying on the text of § 2348, AEC argues that it need only show an "interest[ ] ... affected by the order of the agency," not an interest satisfying the requirements of Article III. AEC emphasizes that it does not seek to participate as a party as of right under the second sentence of § 2348 ("The agency, and any party in interest in the proceeding before the agency whose interest will be affected if an order of the agency is or is not enjoined, set aside, or suspended, may appear as parties [before this court] of their own motion and as of right...."), but as an intervenor under the third sentence of § 2348 ("Communities, associations, corporations, firms, and individuals whose interests are affected by the order of the agency, may intervene in any proceeding to review the order.").[2]

AEC's position is unpersuasive. There is no reason to read the statute as indicating that Congress wished to confer a right to intervene on a party that lacked constitutional standing (which would itself raise a constitutional question). To be sure, § 2348 does not expressly require that an intervenor's interest "relate[ ] to the property or transaction which is the subject of the action," FED. R.CIV.P. 24(a)(2), or that he have Article III standing. As in *Kelley* and *Cook,* however, AEC seeks to participate with many of the same rights enjoyed by the original parties.

2. Although AEC characterizes the latter provision as discretionary, the provision is not discretionary on its face, and AEC provides no authority construing it as such.

Thus, despite the absence of an express statutory command, AEC must meet the standing requirements that Article III imposes on the parties.

As noted above, AEC does not operate in petitioners' geographic market or have any other economic relationship with petitioners or their direct competitors. AEC's only concern is that Alabama Power Company "might at some time" seek to reopen the proceedings concerning the Farley license if petitioners succeed before this court. We agree with the agency, however, that AEC's concern is "unduly remote" and "too 'academic' to cloak it with standing." *In the Matter of Ohio Edison Co., Cleveland Electric Illuminating Co., and Toledo Edison Co.*, 34 NRC 229, 249 (1991). Accordingly, we deny AEC's motion for leave to intervene. AEC may, however, participate as *amicus curiae*.

